FILED
07/19/2018
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 30, 2017 Session[1]

## TOMMY NUNLEY v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
No. 96-10669          John Wheeler Campbell, Judge

_____

**No.  W2016-01487-SC-R11-ECN**

_____


This appeal arises out of the appellant prisoner's petition for a writ of error *coram nobis*. The petitioner, convicted of aggravated rape in 1998, asserted in his petition that the State violated his constitutional right to due process of law by withholding exculpatory evidence from the defense in his trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Without asking the State for a response to the *coram nobis* petition and without an evidentiary hearing, the trial court dismissed the petition in part because it was filed long after expiration of the one-year statute of limitations and demonstrated no reason for equitable tolling of the statute of limitations.  The Court of Criminal Appeals declined to consider the statute of limitations because the State had not pled it as an affirmative defense, but affirmed the dismissal because the petition did not present newly discovered evidence warranting *coram nobis* relief.  On appeal, we initially clarify that an error *coram nobis* proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the petitioner suffered a constitutional due process violation under *Brady*. As to the petition, we hold that (1) *coram nobis* petitions with insufficient allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing; (2) Tenn. R. Civ. P 8.03 does not apply to a petition for writ of error *coram nobis*; (3) timeliness under the statute of limitations is an "essential element" of a *coram nobis* claim that must be demonstrated on the face of the petition; and (4) if the petitioner seeks equitable tolling of the statute of limitations, the facts supporting the tolling request must likewise appear on the face of the petition.  Applying this standard, we find no error in the trial court's decision to dismiss the *coram nobis* petition and affirm.

---

[1] Oral argument was heard in this case on the campus of Lane College in Jackson, Tennessee, as part of the S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the Petitioner/Appellant, Tommy Nunley.[2]

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Zachary T. Hinkle, Assistant Attorney General, for the Respondent/Appellee, State of Tennessee.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

In February 1998, a Shelby County jury convicted Petitioner/Appellant Tommy Nunley of aggravated rape of his thirteen-year-old female cousin on January 17, 1996. The trial court sentenced him to twenty-five years of imprisonment.[3] *Nunley v. State*, No. W2003-02940-CCA-R3-PC, 2006 WL 44380, at *1 (Tenn. Crim. App. Jan. 6, 2006), *perm. app. dismissed* (Tenn. June 26, 2006). On direct appeal, the Court of Criminal Appeals affirmed the conviction and the sentence. *State v. Nunley*, No. 02C01-9804-CR-00114, 1999 WL 135044, at *1 (Tenn. Crim. App. Mar. 12, 1999), *perm. app. denied* (Tenn. Sept. 13, 1999).

On July 25, 2000, Nunley filed a petition for post-conviction relief. *Nunley*, 2006 WL 44380, at *2. The petition claimed that Nunley's "trial counsel was ineffective for failing to move for state-funded expert assistance for DNA testing of various items collected during the investigation of the case." *Id.* The post-conviction court conducted an evidentiary hearing on the motion. *Id.* In the hearing, the assistant public defender who represented Nunley prior to trial[4] testified that she had requested DNA testing of a

---

[2] The Court appreciates the excellent service of Attorney Lance Chism as appointed counsel for Mr. Nunley before this Court.

[3] The Court may take judicial notice of court records and actions in earlier proceedings of the same case. *Delbridge v. State,* 742 S.W.2d 266, 267 (Tenn. 1987).

substance that appeared to be semen on the victim's gray pants, but the Memphis Sexual Assault Resource Center told her that the specimen was too small to conduct any tests. *Id.* at *2. Nunley acknowledged that the assistant public defender had told him this information. *Id.* at *4.

On September 13, 2001, the post-conviction court entered an order, *sua sponte*, directing the TBI to conduct DNA comparison testing on biological samples from Nunley and those in the victim's sexual assault kit. *Id.* at *4. On June 27, 2003, the State reported that the sexual assault kit had been either lost or destroyed and was no longer available for testing.[5] *Id.* at *4. On July 11, 2003, the post-conviction court granted Nunley's petition for post-conviction relief, finding that the failure to test the evidence at the time of trial resulted in a violation of Nunley's constitutional right to a fair trial. *Id.* The State appealed.

The Court of Criminal Appeals reversed the post-conviction court. *Id.* at *7. The proof did not support a finding that trial counsel's request for DNA testing would have affected the outcome of Nunley's trial, the appellate court stated, without "engag[ing] in pure conjecture." *Id.* at *6. For this reason, it held that Nunley had failed to establish that he suffered prejudice from his trial counsel's allegedly deficient performance, and on this basis reinstated the judgment of conviction. *Id.* at *7.

In May 2014, Nunley filed a petition for relief under the Post-Conviction DNA Analysis Act,[6] requesting DNA testing on all evidence in the State's possession. *Nunley v. State*, No. W2014-01776-CCA-R3-PC, 2015 WL 1650233, at * 1 (Tenn. Crim. App. April 13, 2015), *perm. app. denied* (Tenn. Sept. 21, 2015). The State filed a response in opposition on July 7, 2014. *Id.* Ten days later, the trial court denied Nunley's petition based on the post-conviction court's prior finding that any evidence that would have been tested no longer existed. *Id.* The Criminal Court of Appeals affirmed. *Id.* at *3.

---

[4] The assistant public defender represented Nunley until March 27, 1997, and then was permitted to withdraw from representing Nunley prior to the trial due to a conflict of interest. *Nunley*, 2006 WL 44380, at *2. She was not the subject of this ineffective assistance of counsel claim.

[5] The State reported that the victim's sexual assault kit, along with three hundred other kits, was either lost or destroyed in "a flood at U.T. Bowld." *Id.* at *4.

[6] The Post-Conviction DNA Analysis Act of 2001 is codified at Tennessee Code sections 40-30-301 through 40-30-313 (2012 & Supp. 2017).

- 3 -

On May 25, 2016, Nunley delivered a pro se petition for writ of error *coram nobis* to prison officials for mailing; it was filed with the Shelby County Criminal Court on May 31, 2016. Nunley's *coram nobis* petition claimed that the State's July 7, 2014 response to his petition for post-conviction DNA analysis included four exculpatory exhibits of which he had not previously been aware. The *coram nobis* petition asserted that this demonstrated a *Brady* violation:

> [T]he State violated his constitutional right to due process of law, and in particular the principle announced in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by withholding and failing to provide the defense copies of exculpatory evidence, specifically the results of DNA Analysis Test Reports, concerning [the victim's] Rape Kit and other clothing items, conducted by Cellular and Molecular Forensics Laboratory that exonerated [him] of the offense of Aggravated Rape[.]

The first exhibit to Nunley's *coram nobis* petition, Exhibit A, includes two reports from the Cellular and Molecular Forensics Laboratory at the University of Tennessee, Memphis.[7] Exhibit B consists of two letters from the assistant district attorney to the TBI Crime Lab, sent in advance of trial, asking for DNA testing of the evidence in Nunley's case, or at least blood typing. Exhibit C is an "Official Serology Report" from the TBI Crime Lab, dated September 25, 1997.

The fourth exhibit, Exhibit D, is a "memo" to the prosecution's case file from Assistant District Attorney David Shapiro, dated October 3, 1997. A type-written statement on the memo reads, "I spoke to Steve Wiechman at the TBI lab. His lab's policy is not to re-do tests already done by another certified lab. The local lab (Becky Joyner's outfit) determined that there was no match between the defendant and the [victim]. He will not re-do any tests." It also includes a photocopied hand-written note dated September 2, stating that Steve Wiechman of the TBI Lab had called regarding Nunley's case and adding the following hand-written message: "TBI no longer does blood grouping. Due to Becky Joyner [sic] results, he cannot do DNA. He will not re-do Becky Joyner's test."

---

[7] On appeal to this Court, Nunley concedes that the first three exhibits to his petition, Exhibits A, B, and C, do not qualify as newly-discovered exculpatory evidence. Consequently, we only briefly describe the first three exhibits and provide a more detailed description of the fourth, Exhibit D, on which Nunley primarily relies.

In his *coram nobis* petition, Nunley claimed that these four exhibits demonstrate that, prior to trial, the State knew that the victim's rape kit and clothing items were subjected to DNA testing by Cellular and Molecular Forensics Laboratory and that the testing exonerated him of the offense of aggravated rape.[8]  He contended that the exhibits established that the State withheld exculpatory evidence that would have exonerated him, in violation of his constitutional right to due process under *Brady v. Maryland*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  Nunley asserted that he was "reasonably diligent in discovering the new evidence" and that "the jury might have reached a different conclusion had the truth been told based on the new evidence."  He asked the trial court to set aside his conviction and grant him a new trial pursuant to Tennessee Code section 40-26-105(c) (2012 & Supp. 2017).

The trial court did not seek a response from the State on Nunley's *coram nobis* petition and did not conduct an evidentiary hearing on it.  It dismissed the petition on several bases.  First, the trial court found that the issues Nunley raised had been raised before and fully litigated—first in Nunley's trial, then in his petition for post-conviction relief, and then again in his petition for post-conviction DNA testing.  Second, the trial court held that Nunley had not established that there is "newly discovered evidence that would give rise to relief" under the *coram nobis* statutes.  It commented, "All the alleged evidence in this application has been the subject of litigation for over 17 years."  Third, the trial court noted that a petition for *coram nobis* relief must be filed within one year of the conviction, and held that Nunley had "shown no good reason for the one year statute of limitations to be tolled in this case," adding, "The petition should be dismissed as time barred."  For all of these reasons, the trial court dismissed Nunley's petition for writ of error *coram nobis*.

Nunley appealed.  On appeal, the Court of Criminal Appeals addressed two of the bases given by the trial court for its decision.  *Nunley v. State*, No. W2016-01487-CCA-R3-ECN, 2017 WL 838241, at \*-3-4 (Tenn. Crim. App. March 3, 2017).

---

[8] In making this assertion, Nunley's petition significantly misquoted Exhibit D, quoted above. Nunley's petition altered the language in the memo to the file to make it sound as though DNA analysis was in fact performed: "*It is* lab's policy not to re-do test already done by another certified lab *[that] had already performed DNA Analysis Test on [the victim's] Rape, which* the local lab (Becky Joyner's outfit) *had already* determined that there was no match *(DNA Profile)* between the defendant and [the victim]." (altered language italicized)

- 5 -

First, the appellate court addressed the trial court's holding that Nunley's petition for *coram nobis* relief was time-barred under the one-year statute of limitations. *Id*. at *3. It held that the one-year statute of limitations set out in the statutes governing *coram nobis* is an affirmative defense, so it had to be specifically raised by the State. Under the facts of this case, the appellate court said, "the State did not plead the statute of limitations as an affirmative defense in the trial court." *Id*. For this reason, the appellate court declined to address whether Nunley's petition was timely and went on to address his assertion that he is entitled to relief under the *coram nobis* statutes "on grounds that the State [] violated his constitutional rights by withholding exculpatory evidence." *Id*. at *2.

After examining all of the exhibits, including the prosecutor's memo to the file, the Court of Criminal Appeals found that the test results discussed in the memo "are no different than those available to petitioner prior to his trial." *Id*. at *4. It noted that, "regardless of what the memo suggests, testing performed by Cellular and Molecular Forensics Laboratory did not, in fact, 'determine[ ] that there was no match between the defendant and the victim.'" *Id*. The appellate court concluded that, "examined within the context of the record as a whole, the information contained in the memo does not qualify as newly discovered evidence." *Id*. It affirmed the trial court's denial of *coram nobis* relief because Nunley "failed to present newly discovered evidence to establish a 'reasonable basis . . . for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *Id.* (quoting *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007)).

Nunley sought permission to appeal to this Court. In his application, Nunley argued *inter alia* that the lower courts erred in denying him relief because the exhibits to his *coram nobis* petition showed that the State had withheld exculpatory evidence, specifically, the results of DNA testing that exonerated him of the offense of aggravated rape, in violation of his constitutional right to due process under *Brady*, 373 U.S. at 87. In support of this contention, Nunley cited Exhibit D, the prosecutor's memo to the file.

We granted permission to appeal and appointed counsel to represent Nunley before this Court.

ANALYSIS

In this appeal, Nunley contends that he is entitled to *coram nobis* relief because Exhibit D to his petition shows that the State withheld exculpatory evidence at his trial for aggravated rape. In his petition to the trial court, he asserted this was a violation of

- 6 -

his constitutional right to due process under the principles announced in *Brady v. Maryland*, 373 U.S. at 87. He contends that the prosecutor's memo to the file is newly discovered exculpatory evidence showing that the State failed to disclose to his trial counsel the fact that the local lab had conducted DNA testing and had "determined that there was 'no match' between the defendant and the victim."

To fully address Nunley's argument, we briefly outline pertinent history of the writ of error *coram nobis* in Tennessee. To establish the proper analytical framework, we consider the underlying premise of Nunley's petition, namely, whether a *Brady* claim is cognizable in the context of a petition for writ of error *coram nobis*. After doing so, we address whether Nunley's petition should be dismissed as time-barred even though the State was not brought into the *coram nobis* proceedings at the trial court level and consequently did not assert the statute of limitations as an affirmative defense in the trial court.

## I.       Background on *Coram Nobis* in Tennessee

The writ of error *coram nobis*[9] "has ancient common-law roots." *Harris v. State*, 301 S.W.3d 141, 148 (Tenn. 2010) (Koch, J., concurring) (footnote omitted). The common law writ was developed in England to provide relief from judicial errors—particularly "errors of fact not apparent in the record which would have, if known, precluded the court from entering judgment." 39 Am. Jur. 2d *Habeas Corpus* § 194 Coram Nobis - Generally (2008) (citing *United States v. Morgan*, 346 U.S. 502 (1954)); *see also State v. Mixon*, 983 S.W.2d 661, 667 (Tenn. 1999) (citing John S. Gillig, *Kentucky Post Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42*, 83 Ky. L.J. 265, 320 (1994-95)). Since the common law recognized neither a right to move for a new trial nor a right to appeal, this procedural mechanism allowed courts to provide relief under "limited circumstances." *Mixon*, 983 S.W.2d at 666-67 (citing Morgan Prickett, *Writ of Error Coram Nobis in California*, 30 Santa Clara L. Rev. 1, 3, 11 n.41 (1990)).

The writ of error *coram nobis* was incorporated into the common law jurisprudence of the United States. *Id.* In Tennessee, the writ was recognized at common law but was not available in criminal cases. *Mixon*, 983 S.W.2d at 667-68 (citing *Green*

---

[9] The phrase "*coram nobis*" means "our court," or "before us." *State v. Mixon*, 983 S.W.2d 661, 667 (Tenn. 1999) (citing Black's Law Dictionary 304 (5th ed. 1979)). As the writ of error *coram nobis* was originally conceived, it "was addressed to the very court which had rendered the judgment rather than to an appellate or other reviewing court." *Id.*

*v. State*, 216 S.W.2d 305 (Tenn. 1948)). In 1858, the General Assembly codified the procedure for petitioning for a writ of error *coram nobis*. *Id.* (citing Code 1858, § 3111). This early codification of the writ was "very limited in scope" and could not be used "to challenge judgments in criminal cases." *Wlodarz v. State*, 361 S.W.3d 490, 508 (Tenn. 2012) (Koch, J., concurring in result only) (citing *Green*, 216 S.W.2d at 306-07)(majority opinion in *Wlordarz* abrogated by *Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016)).

In 1955, Tennessee's General Assembly extended the writ of error *coram nobis* to apply specifically to criminal proceedings. *Id.* (citing 1955 Tenn. Pub. Acts ch. 166, § 1).[10] However, the new statutory writ "could not be used to collaterally challenge a conviction based on newly discovered evidence." *Wlodarz*, 361 S.W.3d at 508 (Koch, J., concurring in result only). Finally, in 1978, the legislature "broadened the scope of the writ to permit it to be used to challenge a judgment in a criminal case based on newly discovered evidence." *Id*. (citing Act of Mar. 22, 1978, ch. 738, § 1, 1978 Tenn. Pub. Acts 658). In its current configuration, this statute provides:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b).

Meanwhile, "the writ of error coram nobis in civil cases was superseded when Rule 60 of the Tennessee Rules of Civil Procedure became effective in 1971." *Mixon*, 983 S.W.2d at 668 (footnotes omitted) (citing Tenn. R. Civ. P. 60.02 Advisory Commission Comments ("This Rule supersedes chapter 7 of Title 27, T.C.A., dealing with the writ of error coram nobis . . . .")). However, "the adoption of Rule 60 did not diminish or supersede the statute which extended the writ as an available remedy in criminal proceedings." *Id*.

---

[10] The Post-Conviction Procedure Act was not enacted until 1967. *Workman v. State*, 22 S.W.3d 807, 810 (Tenn. 2000) (Drowota, J. concurring); *Archer v. State*, 851 S.W.2d 157, 162 (Tenn. 1993).

Owing to the civil heritage of the writ of error *coram nobis* in Tennessee, the general statutes governing procedures for the writ remain codified in a section of the Code pertaining to civil actions. *See* Tenn. Code Ann. §§ 27-7-101 to -108 (2017). As discussed more fully below, these general statutes include the one-year statute of limitations applicable to a petition for *coram nobis* relief. *See* Tenn. Code Ann. § 27-7-103.

Against this backdrop, we consider the premise of Nunley's petition, namely, that he should be granted *coram nobis* relief based on a *Brady* claim that the State withheld exculpatory evidence at trial.

## II.     *Brady* Violation in Context of *Coram Nobis* Petition

In Nunley's petition for a writ of error *coram nobis*, he asserts that he is entitled to *coram nobis* relief because the State allegedly violated "the principle announced in *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding and failing to provide the defense copies of exculpatory evidence." To provide an appropriate framework for addressing Nunley's argument, we first determine whether it is appropriate to consider an alleged *Brady* violation in the context of a petition for writ of error *coram nobis*. As discussed below, this question has been the source of some confusion in Tennessee.

### *Court of Criminal Appeals Decisions*

After the 1978 *coram nobis* statute was enacted, our Court of Criminal Appeals initially held that a violation of the *Brady* principle is not a ground for relief in the context of a petition for a writ of error *coram nobis*. In a 1995 decision by the Court of Criminal Appeals, an inmate who had been convicted of murder filed a petition for a writ of error *coram nobis*; the petition claimed that he was "entitled to a new trial because the state failed to turn over exculpatory material, as required by *Brady v. Maryland*," at his trial. *State v. Kinnaird*, No. 01C01-9404-CC-00149, 1995 WL 382612, at *4 (Tenn. Crim. App. June 28, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996) (hereinafter *Kinnaird I*). Without elaboration, the appellate court in *Kinnaird I* rejected this contention, holding that "[c]oram nobis is not a forum for the determination of a constitutional issue," so the petitioner's claim did not "constitute grounds for a new trial under coram nobis standards." *Id.*

In 2001, this Court decided a case that did not mention *Brady* but nevertheless figured into the subsequent discussion of whether a *Brady* claim can be considered in the context of a petition for a writ of error *coram nobis*. In *Workman v. State*, 41 S.W.3d 100

(Tenn. 2001), the petitioner claimed that newly discovered scientific evidence would demonstrate that he was actually innocent of the crime for which he was convicted, capital murder. *Id*. at 103. The evidence became available to the petitioner long after post-conviction proceedings had concluded, and the petition for *coram nobis* relief was filed thirteen months after the petitioner became aware of the evidence. *Id.* The issue before the Court was whether the petitioner was entitled to equitable tolling of the one-year statute of limitations. *Id*. at 101. The Court cited the reasoning in *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992), a post-conviction case, stating that, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Id.* at 102 (quoting *Burford*, 845 S.W.2d at 205 (internal quotation marks omitted)). Without describing how the petitioner came to obtain the newly discovered evidence, the Court reasoned:

> [Workman's] claims are based upon evidence obtained from the Shelby County Medical Examiner's Office long after the conclusion of the state-post-conviction proceedings. The delay in obtaining this evidence is not attributable to the fault of Workman or his attorneys. In fact, Workman previously had filed a subpoena requesting an x-ray of this type, but it was not provided. No court in this State has actually held a hearing to fully evaluate the strength of these claims.

*Id.* at 103. The *Workman* Court concluded that due process precluded dismissal of the *coram nobis* petition based on the statutory time bar. *Id.* Reciting the requirements of the *coram nobis* statute, the Court remanded the case for a hearing to give the petitioner the opportunity to show that the newly discovered evidence "may have resulted in a different judgment if the evidence had been admitted at the previous trial" and that he was "without fault" in failing to present the newly discovered evidence at the appropriate time. *Id.* at 104 (citing Tenn. Code Ann. § 40-26-105).

In a case decided after *Workman*, the Court of Criminal Appeals continued to maintain that *Brady* claims are not appropriately considered in a petition for writ of error *coram nobis*. In a 2001 case, the same inmate-petitioner in *Kinnaird I* filed a petition for post-conviction relief, again alleging that the State withheld exculpatory evidence at trial in violation of *Brady*. *Kinnaird v. State*, No. M2000-00037-CCA-R3-PC, 2001 WL 881371 (Tenn. Crim. App. Aug. 7, 2001), *perm. app. denied* (Tenn. Dec. 31, 2001) (hereinafter "*Kinnaird II*"). Addressing whether the petitioner's *Brady* claim was resolved in the *coram nobis* appeal in *Kinnaird I*, the Court of Criminal Appeals held that

- 10 -

it was not. *Id.* at *5. Referring to *Kinnaird I*, the appellate court reiterated that "a petition for a writ of error coram nobis is not the appropriate remedy by which to seek relief from constitutional errors such as that asserted under *Brady v. Maryland*." *Id.* (citing *Miles v. State*, No. 03C01-9903-CR-00103, 2000 WL 2647, at *2 (Tenn. Crim. App. Jan. 4 2000) (holding that a claim alleging constitutional due process error "is cognizable in a post-conviction petition" but "does not qualify for relief in the form of *a writ of error coram nobis*.")). The court in *Kinnaird II* explained that the writ of error *coram nobis* "is not designed to address *Brady* violations: hence, the statute contains no requirement that the State withheld or suppressed the subsequently or newly discovered evidence." *Id.* at *6. It added that "*Brady* violations are constitutional violations: the appropriate remedy is therefore a post-conviction proceeding." *Id.* at *6. *See also Hedges v. State*, No. E2002-02610-CCA-R3-PC, 2003 WL 22426831, *2 (Tenn. Crim. App. Oct. 24, 2003) (following *Kinnaird II* in concluding that "*Brady* violations, as well as constitutional violations, are not appropriate for coram nobis proceedings"); *Harris v. State*, 102 S.W.3d 587, 591 (Tenn. 2003) (noting that "the State points out that an alleged violation of *Brady* is not cognizable in a writ of error *coram nobis* proceeding" without reaching issue).

This perception changed a few years later. In *Freshwater v. State*, 160 S.W.3d 548 (Tenn. Crim. App. 2004), the petitioner was convicted of first-degree murder. Over thirty years after the conviction, her counsel reviewed the district attorney's file and discovered exculpatory evidence that had never been given to defense counsel. *Id*. at 552. The petitioner filed a petition for a writ of error *coram nobis*, asserting that the prosecution's failure to turn over the evidence to her trial counsel was a *Brady* violation. *Id*. The trial court dismissed the petition based on the one-year statute of limitations, and the petitioner appealed. *Id.*

On appeal, the Court of Criminal Appeals acknowledged the holding in *Kinnaird I* and *Kinnaird II* that *Brady* claims are not a basis for granting *coram nobis* relief and should instead be considered in post-conviction proceedings. *Id*. at 555. The *Freshwater* court, however, questioned those decisions. Specifically, the *Freshwater* court expressed concern that, although this Court decided *Workman* after *Kinnaird I* and before *Kinnaird II*, *Kinnaird II* did not reference the intervening Supreme Court decision in *Workman* and instead relied on *Kinnaird I*. *Freshwater*, 160 S.W.3d at 555. The *Freshwater* court deemed this omission significant enough to "call[] into question" the *Kinnaird II* holding that *Brady* violations are not an appropriate basis for *coram nobis* relief. *Id*.

*Freshwater* then concluded that the petitioner's *Brady* claim *could* appropriately be considered in the context of her petition for a writ of error *coram nobis*. *Id*. at 554-55.

- 11 -

It referenced the statute stating that *coram nobis* relief is appropriate for "matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on a writ of error, or in a habeas corpus proceeding." *Id.* at 555 (quoting Tenn. Code Ann. § 40-26-105) (internal quotation marks omitted). After finding that "the [petitioner's] allegations of the newly discovered evidence in the context of violations of *Brady v. Maryland*, were not, and could not have been, litigated previously," the appellate court remanded the case to the trial court for adjudication of the *Brady* claim. *Id.* at 555-56, 558.

The *Freshwater* Court's characterization of *Workman* was unfortunate. As we have noted, this Court's analysis in *Workman* centered on whether due process required a tolling of the statute of limitations applicable to the writ of error *coram nobis*. *Workman*, 41 S.W.3d at 101-104. The opinion indicates that the newly discovered evidence at issue was obtained from the medical examiner's office and that Workman's trial counsel had requested evidence of this type but it was not provided. *Id.* at 103. This information established that neither the petitioner nor his attorneys were at fault for having not produced the evidence sooner—an important consideration in determining whether the statutory requirements for *coram nobis* relief have been met. *Id.* at 103-104; Tenn. Code Ann. § 40-26-105(b). However, the *Workman* Court did not describe the *coram nobis* petition as asserting a "*Brady*" claim and in fact did not mention *Brady* at all in its analysis. Despite this, the Court of Criminal Appeals in *Freshwater* cited *Workman* in support of its holding that the petitioner's "allegations of the newly discovered evidence in the context of violations of *Brady v. Maryland*" are "appropriately addressed in a petition for writ of error coram nobis." *Freshwater*, 160 S.W.3d at 555-56.

Thus, the *Freshwater* court mischaracterized *Workman* in a way that appeared to conflate a constitutional claim under *Brady* with a statutory *coram nobis* claim based on newly discovered evidence previously withheld by the State.[11] As explained below, the distinctions between these two types of claim are nuanced but significant.

---

[11] The confusion may stem in part from the practice of using the term "*Brady*" as shorthand reference to exculpatory evidence that must be disclosed to the defense. *See, e.g., Jordan v. State*, 343 S.W.3d 84, 97 (Tenn. Crim. App. 2011) ("the defendant requested the state to disclose any *Brady* evidence"); *Sanjines v. State*, No. 03C01-9706-CR-00229, 1999 WL 41834, at *1 (Tenn. Crim. App. Feb. 2, 1999) ("Whether the prosecution committed misconduct by withholding *Brady* evidence"). The United States Supreme Court has addressed this practice:

> The term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called '*Brady* material'—although, strictly speaking, there is never a real "*Brady*" violation

- 12 -

In the wake of *Freshwater*, a number of decisions by our Court of Criminal Appeals treated both *Freshwater* and *Workman* as having held that a *Brady* violation can appropriately be raised as a ground for relief under the *coram nobis* statutes. *See*, *e.g.*, *Sykes v. State*, No. W2016-01352-CCA-R3-ECN, 2017 WL 2820189, at *7 (Tenn. Crim. App. June 29, 2017), *perm. app. dismissed* (Tenn. Dec. 8, 2017) (citing *Freshwater* for authority that petitioner may raise a *Brady* violation in a *coram nobis* petition); *Cauthern v. State*, No. W2015-01905-CCA-R3-ECN, 2017 WL 1103049, *8 (Tenn. Crim. App. Mar. 24, 2017) (same), *King v. State*, No. 2014-01202-CCA-R3-ECN, 2015 WL 3409486, *7 (Tenn. Crim. App. May 28, 2015), *perm. app. denied* (Tenn. Sept. 16, 2015) (stating that *Workman* and *Freshwater* "established that a coram nobis petition is the proper cause of action in which to raise *Brady* violations"); *Moats v. State*, No. E2011-02549-CCA-R3-PC, 2013 WL 221647, *10 (Tenn. Crim. App. Jan. 22, 2013), *perm. app. denied* (Tenn. May 8, 2013) (citing *Freshwater* for the proposition that "[a] petition for a writ of error coram nobis may be an appropriate remedy by which to seek relief from constitutional errors such as that asserted under *Brady v. Maryland*"); *Ratliff v. State*, No. E2011-01187-CCA-R3-PC, 2012 WL 1868312, *12 (Tenn. Crim. App. May 23, 2012), *perm. app. denied* (Tenn. Oct. 16, 2012) (same); *Shabazz v. State*, No. E2010-01639-CCA-R3-PC, 2011 WL 2749536, *10 (Tenn. Crim. App. July 15, 2011), *perm. app. denied* (Tenn. Oct. 18, 2011) (same); *Mayfield v. State*, No. M2009-02640-CCA-R3-CO, 2010 WL 4545822, *6 (Tenn. Crim. App. Nov. 12, 2010) (following *Freshwater* as controlling authority and finding petitioner's allegations of newly discovered evidence in the context of *Brady* violations are proper grounds for *coram nobis* relief); *Armstrong v. State*, No. M2008-02328-CCA-R3-CO, 2010 WL 2977890, *13 (Tenn. Crim. App. July 30, 2010), *perm. app. denied* (Tenn. Jan. 18, 2011) (concluding petitioner not entitled to error *coram nobis* relief because he failed to prove that the State suppressed evidence in violation of *Brady*); *Armstrong v. State*, No. M2005-01325-CCA-R3-CD, 2006 WL 1626726, *7-8 (Tenn. Crim. App. June 8, 2006) (holding that petitioner's allegations that State violated his constitutional rights under *Brady* are appropriately addressed in a petition for writ of error *coram nobis*). At least one federal court, based on *Freshwater*, interpreted Tennessee law as permitting a constitutional violation under *Brady* to be

---

unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

considered a ground for relief in a petition for a writ of error *coram nobis*. *Eakes v. Sexton*, 592 Fed. Appx. 422, 430 (6th Cir. 2014).

A few Court of Criminal Appeals opinions have referred to the distinctions between a *Brady* claim and a claim for *coram nobis* relief based on newly discovered evidence previously withheld by prosecutors. *See Schreane v. State*, No. E2012-01202-CCA-R3-PC, 2013 WL 173193, *7 (Tenn. Crim. App. Jan. 16, 2013), *perm. app. denied* (Tenn. May 7, 2013) (using more limited language: "*Brady* claims can, in rare cases, be considered 'newly discovered evidence' in a petition for a writ of error coram nobis"). In *Bonds v. State*, the Court of Criminal Appeals tried to reconcile *Kinnaird II*, which held that the writ is not designed to address *Brady* violations, with *Freshwater*, which held that *Brady* violations can be a basis for relief in a petition for writ of error *coram nobis*. *Bonds v. State*, No. W2006-00343-CCA-R3-CO, 2006 WL 3516225, *4 (Tenn. Crim. App. Dec. 6, 2006), *perm. app. denied* (Tenn. Apr. 16, 2007). *Bonds* attempted to explain: "[E]xcept in rare cases, 'matters appropriate for post-conviction relief-such as *Brady* violations-are not appropriate for coram nobis proceedings.' [citing *Kinnaird II*, 2001 WL 881371] . . . However, in order for the *Brady* violations to be appropriate issues in this context, the petitioner must show that the claims could not have been previously litigated. [citing *Freshwater*, 160 S.W.3d at 555-56]." *Id*.

At least two decisions by the Court of Criminal Appeals recognized the differing standards for a *Brady* claim versus a claim for *coram nobis* relief based on newly discovered evidence improperly withheld from the defense. *See Berry v. State*, No. M2015-00052-CCA-R3-ECN, 2016 WL 1161216, at *14 (Tenn. Crim. App. Mar. 23, 2016), *perm. app. denied* (Tenn. Aug. 18, 2016) (evaluated *coram nobis* claim separately from *Brady* claim with respect to the same evidence); *Baker v. State*, No. M2015-02152-CCA-R3-PC, 2017 WL 283477, at *7, *13 (Tenn. Crim. App. Jan. 23, 2017) (finding petitioner abandoned his *coram nobis* claim by framing the issue of the undisclosed police report as a constitutional *Brady* violation without citing standard applicable to writ of error *coram nobis*). Indeed, on remand from this Court's decision in *Workman*, the Court of Criminal Appeals also recognized these differing standards. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002) (holding that the lesser "may have resulted in a different judgment" standard applies to claims under a writ of error *coram nobis* rather than the "would have" standard under *Brady*).

Therefore, it appears that *Freshwater*'s inadvertent conflation of a constitutional *Brady* claim with a statutory *coram nobis* claim has spawned some confusion. We will endeavor to clarify.

- 14 -

## A. *Error* Coram Nobis *Distinguished from* Brady *Claims*

First we describe the elements required for a writ of error *coram nobis*. In Tennessee, because the writ has been codified, the standards are gleaned from the statutes and the cases interpreting those statutes. This Court has characterized the writ of error *coram nobis* as "an *extraordinary* procedural remedy." *Mixon*, 983 S.W.2d at 672. It may be granted only when the *coram nobis* petition is in writing, describes "with particularity" the substance of the alleged newly discovered evidence, and demonstrates that it qualifies as newly discovered evidence. *Payne v. State*, 493 S.W.3d 478, 484-85 (Tenn. 2016) (citing *Harris*, 301 S.W.3d at 152 (Koch, J., concurring)). In order to qualify as newly discovered evidence, "the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Id*. In addition, the *coram nobis* petition must show why the newly discovered evidence "could not have been discovered in a more timely manner with the exercise of reasonable diligence" and how the newly discovered evidence, had it been admitted at trial, "may have resulted in a different judgment." *Id*. The statute presupposes that the newly discovered evidence would be admissible at trial. *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012); *see also State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995) (rule requiring *coram nobis* court to find that newly discovered evidence may have resulted in a different judgment "presupposes that the evidence . . . would be admissible pursuant to the applicable rules of evidence . . . .").

In considering a *coram nobis* petition, the trial court determines "whether the new evidence may have led to a different result," or in other words, "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Vasques*, 221 S.W.3d at 527. Moreover, "the relief being sought via a writ of error coram nobis 'is the setting aside of the judgment of conviction and the granting of a new trial.'" *Payne*, 493 S.W.3d at 485 (quoting *Harris II*, 301 S.W.3d at 150 n.8 (Koch, J., concurring)).

Next we describe the required elements to prove a *Brady* claim. In *Brady v. Maryland*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court found that the prosecution's suppression of a confession in that case was a violation of the Due Process Clause of the Fourteenth Amendment. *Id*. at 86. To establish a *Brady* violation, a petitioner must establish four elements:

- 15 -

(1)     that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

(2)     that the State suppressed the information;

(3)     that the information was favorable to the accused; and

(4)     that the information was material.

*Johnson v. State*, 38 S.W.3d 52, 56 (Tenn. 2001).

Clearly the rule announced in *Brady* and the writ of error *coram nobis* share a similar overall purpose; both are intended to ensure a fair and reliable determination of the petitioner's criminal liability for the offense with which he was charged.[12] Even so, as we explain below, the two are different animals, with independent bases, distinct standards, and differing available remedies.

As noted above, although the writ of error *coram nobis* originated at common law, Tennessee codified it many years ago and thus it is now governed by statute. *See Payne*, 493 S.W.3d at 487 (noting that Tennessee has a statutory writ of error *coram nobis* and there is no longer "a common law remedy in coram nobis"). We have recognized that "neither the United States Constitution nor the Tennessee Constitution provides a criminal defendant with a constitutional right to error coram nobis relief." *Frazier*, 495 S.W.3d at 248. In contrast, the elements of a *Brady* claim arise from constitutional tenets and have been established by caselaw, not by statute.

Comparing the elements of both types of claim, to establish a *Brady* claim, a post-conviction petitioner must show that the State improperly suppressed material information, favorable to the defense, that it was obliged to disclose. *Johnson*, 38 S.W.3d at 56. A petitioner seeking a writ of error *coram nobis* must demonstrate that he or she "was without fault in failing to present certain evidence at the proper time." Tenn. Code

---

[12]*Compare Kyles v.* Whitley, 514 U.S. 419, 434 (1995) (the question in a *Brady* claim is whether in the absence of the evidence the defendant received "a fair trial, understood as a trial resulting in a verdict worthy of confidence"), *and Brady*, 373 U.S. at 87 (the object "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused"), *with Payne*, 493 S.W.3d at 485 ("the goal of the relief afforded under a writ of error coram nobis is a reliable determination of the petitioner's criminal liability for the offense with which he was charged"), *and* John S. Gillig, 83 Ky. L. J. at 321 (state courts began using the writ of error *coram nobis* "as a means of reviewing the intrinsic fairness of a trial in criminal proceedings") (quoting Eli Frank, Coram Nobis 4, 8-10 (1953)) (internal quotation marks omitted).

Ann. § 40-26-105(b). That can be accomplished by establishing that the evidence at issue was improperly withheld by the prosecution, i.e., *Brady* evidence. However, for *coram nobis* relief, the petitioner can prove his lack of fault in other ways; he need not show that the newly discovered evidence was improperly withheld by the State, as is required to establish a *Brady* violation. *See Harris*, 102 S.W.3d at 592-93 ("Coram nobis claims may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner also establishes that the petitioner was 'without fault' in failing to present the evidence at the proper time.").

As to the other elements, some of the standards are higher for a *coram nobis* claim and others are higher for a *Brady* claim. For example, for a *Brady* claim, the petitioner need not establish that the information withheld by the State was exculpatory; it is sufficient for him to show that it would have been of significant assistance to his defense. "[E]vidence is favorable under *Brady* if 'it provides grounds for the defense to attack the reliability, thoroughness, and good faith of the police investigation, to impeach the credibility of the state's witnesses, or to bolster the defense case against prosecutorial attacks.'" *Jordan v. State*, 343 S.W.3d 84, 96 (Tenn. Crim. App. 2011) (quoting *Johnson*, 38 S.W.3d at 57). Information favorable to the accused may consist of "favorable information that would have enabled defense counsel to conduct further and possibly fruitful investigation regarding the fact that someone other than the appellant [committed the crime]." *Johnson*, 38 S.W.3d at 56 (quoting *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992)) (internal quotation marks omitted). The evidence need not be admissible: "[S]o long as the evidence qualifies as favorable to the accused, the *Brady* duty of disclosure applies, irrespective of the admissibility of the evidence at trial." *State v. Jackson*, 444 S.W.3d 554, 593-94 (Tenn. 2014)(citing *Johnson*, 38 S.W.3d at 56).

In comparison, evidence that is the subject of a petition for *coram nobis* relief must meet a much higher standard. As we have noted, a *coram nobis* petitioner must present evidence that *would be admissible at trial, Wilson*, 367 S.W.3d at 235—not just information that would have enabled and furthered the investigation in his case. In other words, as the State points out, "successful *Brady* claims [may] stand upon inadmissible evidence that would not entitle a defendant to coram nobis relief."

In other ways, however, the standard for a *Brady* claim is higher than that for a petition for *coram nobis* relief. For a *Brady* claim, the petitioner must show that the information was either material to guilt or relevant to punishment. *Johnson*, 38 S.W.3d at 55-56 (quoting *State v. Ferguson*, 2 S.W.3d 912, 915 (Tenn. 1999)). "Evidence is deemed to be material when 'there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding *would have been different*.'" *Id.* at 58 (quoting *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995)) (emphasis added); *see also Strickler v. Greene*, 527 U.S. 263, 280 (1999) (stating the same). "[A] reviewing court must determine whether the defendant has shown that 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence of the verdict.'" *Id.* (quoting *Irick v. State*, 973 S.W.2d 643, 657 (Tenn. Crim. App. 1998)); *see also Strickler*, 527 U.S. at 281 (to establish a "*Brady* violation," the nondisclosure must be "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"). In contrast, a petition for a writ of error *coram nobis* need not show that the result of the proceeding *would have been different had the evidence been available at trial*—the petition need only show that the newly discovered evidence, had it been admitted at trial, *may have* resulted in a different judgment. *Vasques*, 221 S.W.3d at 525-28.

Finally, various forms of relief are available to a post-conviction petitioner who establishes a *Brady* violation. These may include a new trial, *see Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (judgment of conviction reversed and new trial required upon finding *Brady* violation), *Jordan*, 343 S.W.3d at 100 (same), or a new sentencing hearing, *see Johnson*, 38 S.W.3d at 53-54.[13] In contrast, the only relief contemplated in the statutes governing error *coram nobis* is a new trial for the petitioner. Tenn. Code Ann. § 40-26-105(c).

Thus, upon examination, there is a substantive difference between, on one hand, the elements required to establish a post-conviction claim based on a constitutional *Brady* violation, and on the other hand, the elements required to secure relief under the statutes governing writs of error *coram nobis*.

*B.* Coram nobis *not appropriate proceeding for* Brady *violations*

Considering the disparate evidentiary burdens, we agree with the following conclusion in *Kinnaird II*:

> The writ [of error coram nobis] is not designed to address *Brady* violations: hence, the statute contains no requirement that the State withheld or

---

[13] *Cf. Commonwealth v. Burke*, 781 A.2d 1136, 1143 (Pa. 2001) (acknowledging trial court's discretion in fashioning an appropriate remedy for a *Brady* violation, but noting it is not unfettered); Me. R. Crim. P. 16(e) (Maine's state rule providing that particularly egregious violations of a prosecutor's disclosure obligations may call for sanctions including dismissing charges with prejudice).

> suppressed the subsequently or newly discovered evidence. *Brady* violations are constitutional violations: the appropriate remedy is therefore a post-conviction proceeding. . . . As previously noted, matters appropriate for post-conviction relief—such as *Brady* violations—are not appropriate for coram nobis proceedings.

*Kinnaird II*, 2001 WL 881371, at *6.[14] Therefore, we hold that an error *coram nobis* proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the defendant suffered a constitutional due process violation under *Brady*. The appropriate procedural mechanism to seek relief for a *Brady* violation is a post-conviction proceeding.

As we have emphasized, "in Tennessee, the availability of error coram nobis relief is governed solely by statute," *Frazier*, 495 S.W.3d at 248; consequently, relief must be determined by reference to the statutes, *see Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 597 (Tenn. 1999). If the newly discovered evidence that is the subject of an error *coram nobis* petition happens to also be material information favorable to the defense that the State improperly suppressed at trial (sometimes referred to as "*Brady*" evidence), the claim must be evaluated in accordance with the requirements of the *coram nobis* statutes. *See, e.g., Wilson*, 367 S.W.3d at 236 (deciding that prosecutor's handwritten note reflecting mental impression in connection with prosecuting case was protected opinion work product and not admissible, so not sufficient to support petition for writ of error *coram nobis*); *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001) (holding evidence obtained from medical examiner's office after post-conviction proceedings warranted remand for hearing under requirements of *coram nobis* statutes).

In cases in which a petitioner seeks relief via a petition for writ of error *coram nobis* as well as post-conviction proceedings, both based on newly discovered evidence improperly suppressed by prosecutors at trial, each claim for relief should be presented and evaluated on a separate track, so to speak—the first in accordance with the *coram*

---

[14] We do not necessarily embrace the entirety of the analysis in *Kinnaird II*. For example, the Court of Criminal Appeals in *Kinnaird II* relied on the holding in *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966) that "the purpose of the error coram nobis remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *Kinnaird II*, 2001 WL 881371, at *6. In a case decided after *Kinnaird II*, this Court clarified that, in *coram nobis* cases, the correct standard is whether the newly-discovered evidence, had it been admitted at trial, "may have" resulted in a different judgment. *State v. Vasques*, 221 S.W.3d at 527-28.

*nobis* statutes, and the second for a constitutional *Brady* violation under a petition for post-conviction relief.[15] *See e.g., Berry*, 2016 WL 1161216, at *14.

Therefore, although Nunley alleges a violation of *Brady v. Maryland*, he does so only under the rubric of a petition for a writ of error *coram nobis*. Consequently, we will not consider whether Nunley's constitutional rights under *Brady* were violated. Instead, we will analyze his petition by reference to the statutes and caselaw regarding writs of error *coram nobis*. With this framework in mind, we go on to consider whether Nunley's petition should be dismissed as time-barred even though the State was not given an opportunity to respond to the petition at the trial court level and consequently did not assert the statute of limitations as an affirmative defense in the trial court.

### III. Statute of Limitations

To briefly review, the trial court dismissed Nunley's *coram nobis* petition as time-barred. Nunley filed his petition approximately seventeen years after expiration of the one-year limitations period, over eighteen years after his conviction. The trial court reviewed his petition and, without asking the State to respond, concluded that it was filed well after expiration of the limitations period and that Nunley had demonstrated no good reason for equitable tolling of the statute of limitations. Consequently, it dismissed the petition, and Nunley appealed.

The Court of Criminal Appeals acknowledged the trial court's conclusion that Nunley's petition was time-barred but nevertheless considered the petition on its merits because the State had not pled the statute of limitations as an affirmative defense prior to the trial court's dismissal of the petition. *Nunley*, 2017 WL 838241, at *3. It held this even though the State was not brought into the *coram nobis* proceedings at the trial level. The effect of the intermediate appellate court's holding was that the trial court could not dismiss the *coram nobis* petition as untimely unless the State affirmatively raised the statute of limitations, and the State was likewise precluded from raising the statute of limitations at the appellate level even though it was the State's first opportunity to raise it.

Nunley argues that the Court of Criminal Appeals was correct on the statute of limitations issue and that the trial court erred in dismissing his petition as untimely

---

[15] As we have acknowledged, a *coram nobis* claimant may appropriately assert that prosecutors withheld evidence (so-called "*Brady*" evidence) in order to explain why he was without fault in not presenting newly-discovered evidence at trial and/or to support a request for equitable tolling of the statute of limitations.

because the State did not raise the statute of limitations issue to the trial court.  In support, he cites this Court's holding in prior decisions that, in *coram nobis* cases, "[t]he State bears the burden of raising the bar of the statute of limitations as an affirmative defense."  *State v. Harris*, 301 S.W.3d at 144  (hereinafter *Harris II*) (citing *State v. Harris*, 102 S.W.3d at 593 (hereinafter *Harris I*); *Sands v. State*, 903 S.W.2d 297, 299 (Tenn.1995)).  If the State is permitted to argue on appeal that his petition is not timely, Nunley claims that he is entitled to equitable tolling of the statute of limitations under *Workman*, 41 S.W.3d at 101-04.  He asserts he is entitled to it because the trial court should have recognized the late date on which he claims to have become aware of the evidence (in July 2014), or should have at least conducted a hearing to determine whether due process required a tolling of the statute of limitations.  Ultimately, Nunley seeks a new trial on the basis of the alleged *Brady* violation purportedly evidenced by the prosecutor's memo to the file, but in the alternative, he asks us to remand the case to the trial court for an evidentiary hearing to determine whether the State had exculpatory DNA test results in this case.  While Nunley's counsel denied at oral argument that he is requesting discovery, we find his request on brief that "an evidentiary hearing needs to be conducted in order to determine whether the State possessed exculpatory DNA results in this case," is in effect a request for discovery.

In response, the State asks us to reject our prior holding that the State bears the burden in *coram nobis* cases of raising the statute of limitations as an affirmative defense. It asks us to hold instead that timeliness is an element that must be shown by the petitioner on the face of his *coram nobis* petition.  In short, the State asks us to reconsider our holding in *Sands*, *Harris I*, and *Harris II* that the State must affirmatively raise the statute of limitations at the trial court level or else be barred from raising it.[16]  The State contends that the trial court acted within its discretion to hold that Nunley's request for *coram nobis* relief was time-barred.  It maintains that Nunley has made no showing as to why the petition, filed many years after the judgment of conviction was entered, should be deemed timely under the doctrine of equitable tolling.

Regarding the request in Nunley's petition for an evidentiary hearing on a possible *Brady* violation, we reiterate that a *coram nobis* proceeding is not the appropriate venue to determine whether Nunley's constitutional rights under *Brady* were violated. Therefore, in evaluating the issues pertaining to the timeliness of Nunley's petition, we

---

[16] This Court has held that the State did not waive the statute of limitations as a defense in a case in which the *coram nobis* petitioner "raised the issue of the statute of limitations by requesting that it be tolled on due process grounds."  *Wilson v. State*, 367 S.W.3d 229, 234 (Tenn. 2012).  Those facts are not present in the instant case.

- 21 -

focus on the statutes and caselaw governing writs of error *coram nobis.* Specifically, while the late discovery of supposed new evidence purportedly withheld by prosecutors may factor into an analysis of equitable tolling, we evaluate the issue based on the *coram nobis* statutes and the caselaw interpreting them, not under the standards for finding a *Brady* violation.

As referenced by both parties, this Court has stated on more than one occasion that the State bears the burden of affirmatively raising the statute of limitations as a defense to a petition seeking *coram nobis* relief. The issue first arose in *Sands,* in which the defendant filed a pro se petition for post-conviction relief and for a writ of error *coram nobis*. *Sands*, 903 S.W.2d at 298. There the State filed a response in the trial court in which it asserted, among other things, that the petition was time-barred. In doing so, it cited the statute on post-conviction relief that included the statute of limitations applicable to such claims, Tenn. Code Ann. § 40-30-102, but it did not cite the statute of limitations applicable to *coram nobis* claims, Tenn. Code Ann. § 27-7-103. *Id*. at 299. The Court of Criminal Appeals affirmed the trial court's dismissal of both claims; it held the *coram nobis* petition was time-barred, and the petitioner appealed. *Id*. at 299.

On appeal in *Sands*, the petitioner admitted that his *coram nobis* petition was filed more than one year after the judgment of conviction became final, but argued that, under Rule 8.03 of the Tennessee Rules of Civil Procedure, the statute of limitations is an affirmative defense that must be specifically pled or it is deemed waived. Because the State failed to specifically plead the statute of limitations applicable to *coram nobis* actions, he contended, it was precluded from arguing that his *coram nobis* petition was time-barred. *Id*. at 299.

There is no indication in the *Sands* opinion that the State contested the petitioner's assertion that his *coram nobis* petition was governed by Tenn. R. Civ. P. 8.03. Instead, the State argued that, regardless of Rule 8.03, its invocation of the post-conviction statute of limitations gave the petitioner adequate notice that the State intended to assert that his entire petition was time-barred. *Id*. Under that theory, the State maintained, the statute of limitations defense was not waived. *Id.*

The *Sands* Court agreed with the State's argument and stated: *Although Tenn. R. Civ. P. 8.03 does require that a statute of limitations defense be specifically pleaded*, it is well settled that failure to do so does not result in a waiver of the defense if the opposing party is given fair notice of the defense and an opportunity to rebut it.

*Id*. (emphasis added). In support, it cited several civil cases, none of which involved a writ of *coram nobis*. *Id*. (citing *Travelers Ins. Co. v. Austin*, 521 S.W.2d 783, 785-86 (Tenn. 1975); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *McKinnie v. Lundell Mfg. Co.*, 825 F.Supp. 834, 836 (W.D. Tenn. 1993)). Thus, the Court in *Sands* accepted without explicit analysis the premise of the petitioner's argument, namely, that Tenn. R. Civ. P 8.03 applies to error *coram nobis* claims. *Id*. Under the facts of that case, it held that the timeliness defense was not waived because the State's recitation of the post-conviction statute of limitations provided the petitioner with adequate notice of the timeliness defense. *Id*.

The applicability of Rule 8.03 in *coram nobis* cases arose again in *Harris I*, in which the defendant's motion to re-open his post-conviction petition was denied by the trial court. *Harris I*, 102 S.W.3d at 589. The Court of Criminal Appeals *sua sponte* treated the motion as a petition for writ of error *coram nobis* and held that due process precluded application of the one-year *coram nobis* statute of limitations. *Id*. at 590. On appeal, this Court looked at "whether the Court of Criminal Appeals erred in sua sponte treating the petitioner's motion to reopen as a petition for writ of error coram nobis." *Id*. at 591. In the course of analyzing that issue, the Court compared a motion to re-open with a petition for a writ of error *coram nobis*, ultimately concluding that the two are "fundamentally distinct." *Id*. at 591-92. In doing so, the *Harris I* Court said: "Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals." *Id*. at 593. Citing *Sands*, it stated: "Although coram nobis claims also are governed by a one-year statute of limitations, the State bears the burden of raising the bar of the statute of limitations as an affirmative defense." *Id*. (footnote omitted) (citing *Sands*, 903 S.W.2d at 299). On that basis, the Court concluded that the Court of Criminal Appeals had erred in *sua sponte* treating the motion to reopen as a petition for writ of error *coram nobis*. *Id*. at 594.

In *Harris II*, the same defendant Harris filed a petition for a writ of *coram nobis*, asserting newly discovered exculpatory evidence. *Harris II*, 301 S.W.3d at 143. As observed by the majority of the *Harris II* Court, in response to the petition, "the State appropriately raised the statute of limitations in the trial court." *Id*. at 144 (citing *Sands*, 903 S.W.2d at 299). The trial court summarily dismissed the petition, in part on the basis that it was time-barred. *Id*. The Court of Criminal Appeals reversed and remanded for consideration of whether due process required tolling of the statute of limitations. On further appeal to the Supreme Court, the majority of the *Harris II* Court noted, "When a petitioner seeks a writ of error coram nobis based on newly discovered evidence of actual innocence, due process considerations may require tolling of the statute of limitations."

*Id*. at 145 (citing *Workman*, 41 S.W.3d at 101).  It ultimately concluded that the petitioner was "not entitled to due process tolling."  *Id*. at 147.

Important to the instant case, Justice William Koch filed a separate opinion in *Harris II*, concurring in part and concurring in the result.[17]  In the separate opinion, Justice Koch stated that he "would affirm the trial court's denial of coram nobis relief on both claims because of fatal substantive deficiencies in Mr. Harris's petition for coram nobis relief."  *Id*. at 148 (Koch, J., concurring).

At the outset, the concurring opinion in *Harris II* observed that, in Tennessee, a trial court's decision on whether to grant a writ of error *coram nobis* is reviewed for an abuse of discretion, a review standard that "calls for less intense appellate review."  *Id*. (citing *Vasques*, 221 S.W.3d at 527-28 on standard of review, and *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009) on intensity of appellate review).  The concurring opinion took the position that the allegations in a petition seeking *coram nobis* relief must be specific in order to avoid dismissal on the face of the petition.  *Id*. at 150.  It outlined what must be in the petition to meet the required level of specificity:

> The motion or petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence."  In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible.  In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the prisoner must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.

*Id*. at 152 (footnotes and citations omitted) (quoted with approval in *Payne*, 493 S.W.3d at 485).  The affidavits supporting the petition, the *Harris II* concurring opinion stated, "must set forth with particularity" facts showing that the petitioner and his trial counsel "exercised reasonable diligence and were not negligent" in searching for evidence prior to trial, and that the petitioner and his trial counsel "had no pretrial knowledge of the

---

[17] Justice Cornelia Clark concurred in Justice Koch's separate concurrence.

allegedly newly discovered evidence." *Id*. (citing *Jones v. State*, 452 S.W.2d 365, 367 (Tenn. Crim. App. 1970)).

Discussing how the statute of limitations informs the *coram nobis* requirement of showing lack of negligence, the concurring opinion in *Harris II* stated:

> A petition for writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn.Code Ann. § 27–7–103. *It is subject to being summarily dismissed if it does not show on its face that it has been timely filed.* Accordingly, unlike other proceedings governed by the Tennessee Rules of Civil Procedure in which failure to comply with the statute of limitations must be raised as an affirmative defense, *compliance with the timely filing requirement in Tenn.Code Ann. § 27–7–103 is an essential element of a coram nobis claim.*

*Id*. at 153 (emphases added) (internal citations and footnote omitted) (citing Joseph Higgins & Arthur Crownover, *Tennessee Procedure in Law Cases* § 1765, at 702 (1937), and William H. Inman, *Gibson's Suits in Chancery* § 665, at 704, § 668, at 709 (6th ed. 1982)). In a footnote to this passage, Justice Koch explained:

> Tenn. R. Civ. P. 8.03 states that the statute of limitations is an affirmative defense which must be raised by the defendant. Writs of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 are not governed by the Tennessee Rules of Civil Procedure but rather by Tenn. Code Ann. §§ 27-7-101 through–108. Tenn. Code Ann. § 27-7-101 states explicitly that the Tennessee Rules of Civil Procedure do not apply to these writs. Accordingly, I would no longer adhere to our characterization of the statute of limitations as an affirmative defense in *Harris v. State*, 102 S.W.3d at 593; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn.1995).

*Id*. at 153 n.17. The concurrence acknowledged that *Workman* applied the doctrine of equitable tolling to a petition for a writ of error *coram nobis*. *Id*. at 153 (citing *Workman*, 41 S.W.3d at 101-04). Combining the availability of this equitable doctrine with the requirement of pleading with specificity, the concurrence took the position that the *coram nobis* petition must show on its face that (1) the ground on which the petitioner seeks relief arose after the time when the statute of limitations normally would have started to run; (2) strict application of the statute of limitations would effectively deny him a reasonable opportunity to present his claim; and (3) the petitioner was deprived of a constitutional right during the conviction process related to the ground for relief asserted

- 25 -

in the petition.[18] *Id*. Applying this standard, the concurring opinion reviewed the petition at length and concluded that "the substantive deficiencies" in the petition provided the trial court with "ample grounds" to deny the petition "without a hearing." *Id*. at 162.

In sum, in *Harris I*, the Court's analysis indicated that *coram nobis* claims are usually not subject to summary disposition and often require a hearing. *Harris I*, 102 S.W.3d at 593. *Sands* and *Harris I* both held that the statute of limitations in an error *coram nobis* case is an affirmative defense subject to waiver if the State fails to affirmatively plead it. *Id*. at 593; *Sands*, 903 S.W.2d at 299. The premise of this holding in both cases is the *Sands* assumption that Rule 8.03 of the Tennessee Rules of Civil Procedure applies to a petition for a writ of error *coram nobis*.

In contrast, after expressly examining these issues in his concurring opinion in *Harris II*, Justice Koch reached several contrary conclusions: (1) petitions for a writ of error *coram nobis* must contain specific allegations and are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing, if they do not; *Harris II*, 301 S.W.3d at 150, 154; (2) Tenn. R. Civ. P 8.03 does not apply to a petition for writ of error *coram nobis*; *id.* at 153 n.17; (3) timeliness under the *coram nobis* statute of limitations is an "essential element" that must appear on the face of the petition; *id.* at 153; and (4) if the petitioner seeks equitable tolling of the statute of limitations, the facts supporting the request must likewise appear on the face of the petition; *id.* at 153. In this appeal, the State in essence asks us to adopt the ruling outlined in the concurring opinion in *Harris II*. We consider it below.

Resolution of these issues requires us to interpret the statutes governing the writ of error *coram nobis*, Tenn. Code Ann. § 40-26-105, and the accompanying procedural statutes, Tenn. Code Ann. §§ 27-7-101 through -108. "Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both." *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). "[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Id*. (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994)). "We seek to adopt the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" *Id*. (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)).

---

[18] This prong of the *Harris II* concurrence is addressed *infra* at footnote 22.

*A. Dismissal on face of petition*

First we consider whether a petition for a writ of *coram nobis* is susceptible to dismissal on the face of the petition, without discovery or an evidentiary hearing. Nunley argues in this appeal that the trial court erred in dismissing his request for *coram nobis* relief based on the bare allegations in the petition. Consistent with *Harris I*, 102 S.W.3d at 593, he asserts that, before his petition can be dismissed, he should be given an evidentiary hearing on whether a *Brady* violation occurred in his case and to determine whether the State possessed exculpatory DNA results, which essentially amounts to a request for discovery.

Contrary to Nunley's suggestion and the implication in dicta in *Harris I*, in Tennessee, a petition for a writ of error *coram nobis* has long been subject to dismissal on the face of the petition, without discovery or an evidentiary hearing, and even prior to notification to the opposing party. The treatise Joseph Higgins & Arthur Crownover, *Tennessee Procedure in Law Cases* (1937) (hereinafter "Higgins & Crownover") explained that a judge who received a petition for a writ of error *coram nobis* was authorized to make an initial determination based on the face of the petition, without notice to the opposing party: "Upon presentation of the petition the judge examines the same, and *if the petition be in his judgment sufficient*, he will direct the filing of the petition" and endorse his fiat[19] upon the writ. *Id*. at § 1768-69, at 702 (emphasis added). Only then was the opposing party notified of the *coram nobis* petition and the award of the writ. *Id*. at § 1769, at 702. If the judge deemed the petition insufficient on its face, he was expected to simply dismiss it. *See* Sam Gilreath & Bobby R. Aderholt, *Caruthers' History of a Lawsuit* § 401, at 453 (8th ed.1963) ("It is to be presumed that the petitioner has made out the best case he has against the judgment complained of; and if that is not sufficient, the proceedings should go no further."). *See, e.g., U.S. F. & G. Co. v. Reese*, 301 S.W.2d 535, 536 (Tenn. 1957) (dismissing request for *coram nobis* relief based on insufficient allegations in petition); *Gallena v. Sudheimer*, 56 Tenn. 189, 190 (1872) (affirming dismissal based on insufficiency of allegations in petition); *Elliott v. R.C. McNairy & Co.*, 60 Tenn. 342, 346 (1872) (petition subject to dismissal if its averments are insufficient or on its face contrary to law).

Thus, as observed by the concurring opinion in *Harris II*, "at no point during the evolution of the writ of error *coram nobis* in Tennessee have the appellate courts held that trial courts cannot dismiss a petition for writ of error *coram nobis* without first

---

[19] Fiat: "A court decree, esp. one relating to a routine matter such as scheduling." Fiat, *Black's Law Dictionary* (10th ed. 2014).

holding an evidentiary hearing." *Harris II*, 301 S.W.3d at 153. Clearly, then, a petition for a writ of error *coram nobis* is subject to dismissal on the face of the petition. This holding correlates with the "less intense" abuse-of-discretion standard of appellate review for a trial court's decision on whether to grant a writ of error *coram nobis*. *Id*. at 148 (citing *Vasques*, 221 S.W.3d at 527-28 (abuse of discretion as standard of appellate review for *coram nobis* cases) and *Beard*, 288 S.W.3d at 860 (Tenn. 2009) (abuse of discretion as less intense standard of appellate review)).

Of course, as noted in *Harris I*, there will be instances in which the request for *coram nobis* relief cannot be resolved based only on the face of the petition. *Harris I*, 102 S.W.3d at 593. However, "trial courts need only conduct evidentiary hearings when they are essential." *Harris II*, 301 S.W.3d at 154 (Koch, J. concurring) (citing Larry W. Yackle, *Postconviction Remedies* § 1:10 (2009)). Overall, we agree with Justice Koch's admonition in the concurring opinion in *Harris II*:

> The sufficiency of the contents of a petition for writ of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 is of utmost importance. Judges anticipate that the petition itself embodies the best case the petitioner has for relief from the challenged judgment. Thus, the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides.

*Id*. at 150 (internal citation omitted).

### B. Tenn. R. Civ. P. 8.03

Next we consider whether Tenn. R. Civ. P. 8.03 is applicable to a petition for writ of error *coram nobis*. As we have noted, in civil cases, the writ was superseded by Rule 60 of the Tennessee Rules of Civil Procedure, which became effective in 1971. *Mixon*, 983 S.W.2d at 668; *see also Harris I*, 102 S.W.3d at 592 n.7. However, "the adoption of Rule 60 did not diminish or supersede the statute which extended the writ as an available remedy in criminal proceedings." *Id*.

In 1978, several years after adoption of the Rules of Civil Procedure, Section 40-26-105 was broadened to permit the writ to be used to challenge a criminal conviction based on newly discovered evidence. *Wlodarz*, 361 S.W.3d at 508 (Koch, J., concurring in result only). Section 40-26-105 says, in criminal cases, the writ of error *coram nobis* is "to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases . . . ." Tenn. Code Ann. § 40-26-105(a). "The anomalous result is

that the writ of error coram nobis continues to be an available remedy in criminal actions, but the procedure governing the remedy is based upon the civil writ of error coram nobis which has been abolished. . . ." *Mixon*, 983 S.W.2d at 668. Thus, under section 40-26-105(a), the civil statutory procedures in sections 27-7-101 through -108 govern the criminal writ of error *coram nobis*.

In light of this, we cannot agree with the *Sands* holding that criminal error *coram nobis* claims are also governed by the Tennessee Rules of Civil Procedure. *Sands*, 903 S.W.2d at 299. Section 27-7-101 provides: "Any person aggrieved by the judgment of any court in a civil case *which is not governed by the Tennessee Rules of Civil Procedure* by reason of a material error in fact may reverse the judgment upon writ of error coram nobis as provided in this chapter." Tenn. Code Ann. § 27-7-101 (emphasis added). As we have observed, Section 40-26-105(a) says that criminal writs of error *coram nobis* are "governed by *the same rules and procedure* applicable to the writ of error coram nobis in civil cases. . . ." Tenn. Code Ann. § 40-26-105(a) (emphasis added). Thus, Section 27-7-101 says that error *coram nobis* claims are permissible *only* in cases *not* governed by the Rules of Civil Procedure. The assertion in *Sands*—that criminal *coram nobis* claims are governed by Tenn. R. Civ. P. 8.03—cannot be so, because if the Tennessee Rules of Civil Procedure apply, the writ of error *coram nobis* will not lie. "We must presume that the General Assembly 'did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.'" *Dellinger v. State*, 279 S.W.3d 282, 291 (Tenn. 2009) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)). *See also Mixon*, 983 S.W.2d at 668 ("[T]he adoption of Rule 60 did not diminish or supersede the statute which extended the writ as an available remedy in criminal proceedings.").

We can only conclude, then, that criminal error *coram nobis* claims are not governed by the Tennessee Rules of Civil Procedure. We agree with the statement in the concurring opinion in *Harris II* that "[w]rits of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 are not governed by the Tennessee Rules of Civil Procedure but rather by Tenn. Code Ann. §§ 27-7-101 through -108." *Harris II*, 301 S.W.3d at 153, n.17 (Koch, J., concurring).

*C. Timeliness as essential element in petition*

Next we consider whether timeliness under the statute of limitations is an "essential element" of a *coram nobis* claim that must appear on the face of the petition. *Id*. at 153. Authorities discussing the writ prior to adoption of the Tennessee Rules of Civil Procedure emphasize that a petition for *coram nobis* relief must be filed within the

one-year period after the judgment at issue. Higgins & Crownover observed that the writ of error *coram nobis* "is available within one year from the rendition of the judgment; and this limitation is strictly observed." Higgins & Crownover, at § 1767, at 701; *see also* William H. Inman, *Gibson's Suits in Chancery* § 665, at 704 (6th ed.1982) (hereinafter "Inman") (petition for writ of error *coram nobis* must be "filed within one year from the rendition of the decree complained of"). Expounding on Tennessee practice when the writ was available in civil cases, the Higgins & Crownover treatise equates the failure to show timeliness on the face of the petition with failure to state a claim upon which relief can be granted:

> [T]he proceeding owes its validity to the petition alone. If the allegations are insufficient, such as, *that it was filed too late*, or shows culpable negligence, or fails to show an error that is correctible by this writ, the petition should be dismissed for the reason that in all such cases there is a *failure to set forth a cause of action*.

Higgins & Crownover, § 1771, at 702 (emphases added).[20] This indicates that timeliness was considered an element of a *coram nobis* claim.

There is no reason to think this changed after the legislature made the writ available in criminal cases. *See* Tenn. Code Ann. § 40-26-105(a). The same procedural statutes apply, and Tennessee retained the one-year statute of limitations for *coram nobis* claims. Tenn. Code Ann. § 27-7-103.

Because the holding in *Sands*, that the statute of limitations is an affirmative defense, was based on the erroneous assumption that Tenn. R. Civ. P. 8.03 applies in *coram nobis* cases, that holding will not stand. *See Sands*, 903 S.W.2d at 299. Moreover, if a *coram nobis* petition may be dismissed as untimely based on the trial judge's initial review of the petition, prior to notice being given to the State, it stands to reason that the statute of limitations is not a defense that must be affirmatively pled by the State.[21] Were it otherwise, we would retain the anomalous situation presented under

---

[20] If the petition for writ of error *coram nobis* was not dismissed prior to notice to the opposing party, it remained subject to dismissal as untimely upon motion: "If the petition . . . is not filed within one year since the decree became final, it may be dismissed on motion." Inman, §668, at 709.

[21] We acknowledge that, in holding that the trial court erred in dismissing Nunley's petition as untimely because the statute of limitations is an affirmative defense that must be pled by the State at the trial court level, the Court of Criminal Appeals followed our previous guidance in *Harris I*, 102 S.W.3d at 593, and *Sands*, 903 S.W.2d at 299.

the facts of this case, where the effect of the Court of Criminal Appeals' holding is to preclude the State from asserting the statute of limitations at the appellate level in a *coram nobis* case even though the State had no opportunity to raise it at the trial court level.

Thus, we agree with the concurring opinion in *Harris II* that a petition for a writ of error *coram nobis* "is subject to being summarily dismissed if it does not show on its face that it has been timely filed" and that "compliance with the timely filing requirement in Tenn. Code Ann. § 27-7-103 is an essential element of a coram nobis claim." *Harris II*, 301 S.W.3d at 153 (Koch, J., concurring) (citing Higgins & Crownover, § 1765, at 702; and Inman, § 665, at 704, § 668, at 709). Accordingly, we hold that the statute of limitations set forth in Section 27-7-103 is not an affirmative defense that must be specifically raised by the State in error *coram nobis* cases; instead, the *coram nobis* petition must show on its face that it is timely filed. We overrule our prior cases to the extent that they hold otherwise, including, but not limited to, *Wilson*, 367 S.W.3d at 234; *Harris II*, 301 S.W.3d at 144; *Harris I*, 102 S.W.3d at 593; *Sands*, 903 S.W.2d at 299. This holding is consistent with Tennessee's "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Mixon*, 983 S.W.2d at 670.

### D. Facts on equitable tolling in petition

Finally we consider whether, if a *coram nobis* petitioner seeks equitable tolling of the statute of limitations, facts supporting the tolling request must also appear on the face of the petition. As we have noted, in Tennessee, the statute of limitations in *coram nobis* cases has historically been "strictly observed." Higgins & Crownover, § 1767, at 701. However, in the context of criminal cases, this Court has held that, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford*, 845 S.W.2d at 208; *see also Workman*, 41 S.W.3d at 102 (applying the holding in *Burford*, a post-conviction proceeding, to error *coram nobis* proceedings). To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error *coram nobis* seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. *Wilson*, 367 S.W.3d at 234 (citing *Harris II*, 301 S.W.3d at 145, and *Workman*, 41 S.W.3d at 101).

In keeping with the extraordinary nature of the writ, *Payne*, 493 S.W.3d at 484, the petition must be pled with specificity. *Harris II*, 301 S.W.3d at 150 (Koch, J.,

concurring). If the *coram nobis* petition does not show on its face that it is filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations:

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims. . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

*Id*. at 153 (footnotes omitted) (citing *Sample v. State*, 82 S.W.3d 267, 272 (Tenn. 2002); *Sands*, 903 S.W.2d at 301; *Burford*, 845 S.W.2d at 205).[22] If a petition for a writ of error *coram nobis* fails to show on its face either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it. *Id.* There is no requirement that trial courts hold an evidentiary hearing prior to dismissing a *coram nobis* petition if the petition "fails to meet the necessary prerequisites for granting coram nobis relief." *Id.* (citing *Cole v. State*, 589 S.W.2d 941, 941-43 (Tenn. Crim. App. 1979), and Yackle, § 1:10). "If the averments in the petition are insufficient to warrant relief, the petition may be dismissed" prior to any response from the state and without a hearing. *Id.* (citing *Elliott v. R.C. McNairy & Co.*, 60 Tenn. 342, 346-47 (1872)); *see also* 39 Am. Jur. 2d *Habeas Corpus* § 228 Coram Nobis Practice and Procedure (2008) (trial court has no duty to try the issues raised in a *coram nobis* petition unless "the verified petition on its face shows sufficient grounds for the issuance of the writ and the necessity for a hearing thereon").

---

[22] As noted above, the *Harris II* concurrence also states that a prisoner seeking equitable tolling of the statute of limitations must demonstrate "(3) that the prisoner was deprived of a constitutional right during the conviction process with regard to the ground for relief now being pursued." *Harris II*, 301 S.W.3d at 153 (Koch, J., concurring). We respectfully disagree with this assertion in the *Harris II* concurrence. As discussed above in connection with Nunley's *Brady* claim, the writ of error *coram nobis* is not a procedure for remedying deprivations of constitutional rights; such claims are cognizable in post-conviction proceedings.

*E. Application of standard to Nunley's petition*

Under this standard, we examine Nunley's petition. As summarized above, Nunley's petition, filed on May 31, 2016, states that his jury trial took place from February 9-12, 1998, and contains the conclusory assertion that it was "timely file[d]," without reference to the one-year statute of limitations.[23]

The petition describes the purported "new evidence" in detail and claims *inter alia* that the State violated Nunley's constitutional rights under *Brady v. Maryland*. Pertinent to equitable tolling, the petition states only that the purported new evidence was provided by the State on July 7, 2014, in response to another post-conviction petition Nunley filed. It does not refer to the roughly eighteen-year gap between Nunley's conviction and his petition for *coram nobis* relief, nor does it explain why Nunley waited nearly two years after the State's July 7, 2014 pleading to file his petition.[24] In short, although the *coram nobis* petition was filed eighteen years after the conviction, it does not explain why Nunley would be entitled to tolling of the one-year statute of limitations.

The doctrine of equitable tolling requires the court to consider "the governmental interests involved and the private interests affected by the official action." *Workman*, 41 S.W.3d at 103. Those competing interests are weighed to determine whether due process requires tolling of the statutory limitations period, in light of the fact that "due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford*, 845 S.W.2d at 208. Based on the facts of the particular case, the *coram nobis* petition must be filed within a time period that "does not exceed the reasonable opportunity afforded by due process." *See Sample*, 82 S.W.3d at 276; *Workman*, 41 S.W.3d at 103. *See also Workman*, 41 S.W.3d at 105-06 (Anderson, Riley, J., dissenting) (noting that, even if statute of limitations was tolled during time in which petitioner was unaware of the new evidence, "the record in this case shows that more than one year, the time provided by the statute of limitations,

---

[23] The petition does not contain the date of Nunley's judgment of conviction, which is the date the limitations period begins to run on a *coram nobis* claim, assuming no post-conviction motions were filed impacting the finality of the judgment of conviction. Tenn. Code Ann. § 27-7-103. *See Mixon*, 983 S.W.2d at 670.

[24] In his brief to this Court, Nunley recognizes that his "pro se petition never acknowledges the one-year statute of limitations and never mentions due process tolling." The statement in Nunley's brief was made to support his argument that he was not on notice of the statute of limitations because the State did not raise it as an affirmative defense.

- 33 -

has passed since he first became aware of the evidence," so "due process is not implicated").

The trial court concluded that Nunley's petition was not timely under the statute of limitations applicable to *coram nobis* claims. "Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo." *Harris II*, 301 S.W.3d at 144 (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)). The trial court also concluded that Nunley had not demonstrated that he was entitled to equitable tolling of the *coram nobis* statute of limitations. "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Harris II*, 301 S.W.3d at 145 (citing *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)).

Reviewing the record and Nunley's *coram nobis* petition, we find no error in the trial court's decision to dismiss the petition without notice to the State or an evidentiary hearing. First, although Nunley's petition was filed eighteen years after his conviction, it does not acknowledge the one-year statute of limitations or explain why he is entitled to equitable tolling of the statute of limitations. Second, we agree with the trial court that the issues raised in Nunley's *coram nobis* petition "have been raised before and litigated," first at trial and then in Nunley's petitions for post-conviction relief and for post-conviction DNA testing.[25] Moreover, on its face, the prosecutor's memo to the file on which Nunley relies does not qualify as substantive admissible evidence that "may have resulted in a different judgment, had it been presented at the trial."[26] Tenn. Code Ann. § 40-26-105(b). Thus, the petition shows neither that the ground on which Nunley seeks relief arose after the time when the statute of limitations normally would have started to run, nor that strict application of the statute of limitations would effectively deny him a reasonable opportunity to present his claim. *Harris II*, 301 S.W.3d at 153

---

[25] The writ of error *coram nobis* "is not a 'catch-all' remedy that enables convicted persons to 'litigate and relitigate the propriety of their convictions *ad infinitum*.'" *Harris II*, 301 S.W.3d at 148 (Koch, J., concurring) (quoting *People v. Hyung Joon Kim*, 202 P.3d 436, 447 (Cal. 2009)).

[26] As stated above, "In order to be considered 'newly discovered evidence,' the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Payne*, 493 S.W.3d at 485. A petitioner seeking *coram nobis* relief is required to bring specific evidence that he did not have at trial that entitles him to such relief; factual conclusions based on speculation and unsupported by admissible evidence are not sufficient. *See* 39 Am. Jur. 2d Habeas Corpus § 221 Coram Nobis Practice and Procedure (2008) (Even for pro se petitions, "[t]he allegations concerning prejudice to the petitioner . . . must be specific, concrete and supported by evidence; vague, speculative, or conclusory allegations are insufficient.").

(Koch, J., concurring). "A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief." *Id*.

In short, to review a petition for a writ of error *coram nobis* for timeliness, we first determine whether the petitioner "asserted the claim in a timely manner and, if not, whether he has demonstrated that he is entitled to equitable tolling of the statute of limitations as provided in Tenn.Code Ann. § 27-7-103. The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." *Id*. at 155. On its face, Nunley's petition is untimely under the one-year statute of limitations, and it contains no specific facts showing a basis for holding that he is entitled to equitable tolling of the statute of limitations. The trial court had ample grounds to deny his request for *coram nobis* relief without a hearing, so we affirm its decision.

This holding pretermits other arguments raised by Nunley in this appeal.

**CONCLUSION**

In sum, we initially clarify that an error *coram nobis* proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the petitioner suffered a constitutional due process violation under *Brady v. Maryland*, 373 U.S. at 87. As to the *coram nobis* petition, we hold that (1) *coram nobis* petitions with inadequate allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing; (2) Tenn. R. Civ. P 8.03 does not apply to a petition for a writ of error *coram nobis*; (3) timeliness under the statute of limitations is an "essential element" of a *coram nobis* claim that must appear on the face of the petition; and (4) if the petitioner seeks equitable tolling of the statute of limitations, the facts supporting the tolling request must likewise appear on the face of the petition. Applying this standard, we find no error in the trial court's decision to dismiss Nunley's *coram nobis* petition.

- 35 -

We affirm the judgment of the trial court and affirm the judgment of the Court of Criminal Appeals on other grounds, as stated herein.

_____
HOLLY KIRBY, JUSTICE