IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

## LEAH WARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-04434      Jennifer Mitchell, Judge**

_____

#### No. W2021-00952-CCA-R3-ECN

_____

The petitioner, Leah Ward, appeals the dismissal of her petition for writ of error coram nobis, which petition challenged her 2005 Shelby County Criminal Court Jury conviction of first degree murder, arguing that the coram nobis court should have held a hearing on her petition. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and TIMOTHY L. EASTER, JJ., joined.

Joshua N. Corman, Memphis, Tennessee, for the appellant, Leah Ward.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

#### OPINION

A Shelby County Criminal Court Jury convicted the petitioner of the first degree murder of Ejaz Ahmad, and the trial court imposed a sentence of life imprisonment. *State v. Leah Joy Ward*, No. W2005-02802-CCA-R3-CD, 2007 WL 1556663, at *1 (Tenn. Crim. App., Jackson, May 30, 2007). The evidence adduced at trial established that the petitioner and the victim were married in October 2002. The victim disappeared in late April 2003, and the petitioner "deflected all inquires concerning the victim's whereabouts with knowing falsehoods." *Id.*, 2007 WL 1556663, at *7. Eventually, the victim's son and his former mother-in-law, Ernestine Marsh, discovered what turned out to be the victim's body in a shed outside the home "covered by a foam eggcrate mattress." *Id.*, 2007 WL 1556663, at *3. The victim had been shot, stabbed, and decapitated; "there had been an attempt to cut off the left leg." *Id.*, 2007 WL 1556663, at *4. When she was interviewed

by the police on May 5, 2003, the petitioner admitted that "she had shot the victim at least three weeks earlier" in self-defense with a gun that she had hidden in their residence. *Id.* She admitted having disposed of the murder weapon and having "cut the victim's head off with a sword. She disposed of the head in a dumpster." *Id.*, 2007 WL 1556663, at *5. The petitioner also admitted that she wrapped the victim's body in the foam mattress and concealed it in the shed before systematically disposing of his property. Neighbors and friends confirmed that the petitioner sold off most of the victim's property at the end of April 2003.

This court affirmed the conviction and sentence on direct appeal, and the petitioner did not file a timely application for permission to appeal to our supreme court. She did file an untimely petition for post-conviction relief that was dismissed as time-barred. This court affirmed the summary dismissal on appeal, finding that due process principles did not require the tolling of the statute of limitations for filing a petition for post-conviction relief. *Leah Joy Ward v. State*, No. W2009-00088-CCA-R3-PC, 2010 WL 481211, at *2 (Tenn. Crim. App., Jackson, Feb. 11, 2010).

On November 19, 2019, the petitioner filed a petition for writ of error coram nobis, claiming that newly discovered evidence in the form of a book written about her killing of the victim that was released in May 2019 and "legal papers produced on September 2019 from husband Tim Ward's death." She argued that statements in the book suggested that the crime scene was contaminated by Ms. Marsh and that Ms. Marsh's inappropriate participation in the search of the victim's residence resulted in the petitioner's being charged with first degree murder instead of criminally negligent homicide. She also claimed that proof that she stood to inherit money from her estranged husband, Tim Ward, could have rebutted evidence that she murdered the victim for financial gain. In its response to the petition, the State averred that the petitioner had failed to establish that the allegedly new information was not available to her prior to trial, that the purported new evidence consisted entirely of "double or triple hearsay," and that it had "no bearing on the verdict in this case."

The coram nobis court summarily dismissed the petition, finding that even if the information proffered by the petitioner could qualify as newly-discovered evidence, it could not avail her of any relief because the evidence would not have led to a different outcome at trial. The court concluded that the information allegedly relayed to the police by Ms. Marsh during a walk-through of the victim's home was "merely supplemental to the [petitioner]'s own testimony" and that information that the petitioner stood to inherit from her estranged husband would not have been relevant at trial. Additionally, the court expressed doubt about some of the claims made in the book that the petitioner cited as newly-discovered evidence, noting that the information "represents double if not triple

hearsay" and that the author had acknowledged "that she was unable to verify any such claims."

In this appeal, the petitioner challenges the summary dismissal of her petition. The State contends that summary dismissal was appropriate.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2006); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (describing standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different" (citation omitted)). The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories but may be based upon any "newly discovered evidence relating to matters which were litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. T.C.A. § 40-36-105(b).

The statute of limitations for filing a petition for writ of error coram nobis is one year, *see* T.C.A. § 27-7-103; *Mixon*, 983 S.W.2d at 670, and "compliance with the timely filing requirement in Tenn. Code Ann. § 27-7-103 is an essential element of a coram nobis claim," *see Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018) (citations omitted). "To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id.* at 828-29 (citations omitted). The petition must either establish on its face the timeliness of the petition or "set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations." *Id.* at 829. The coram nobis court need not "hold an

evidentiary hearing prior to dismissing a coram nobis petition if the petition 'fails to meet the necessary prerequisites for granting coram nobis relief.'" *Id.* at 829 (citations omitted).

Although the decision to grant or deny coram nobis relief rests within the sound discretion of the trial court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness," *Nunley*, 552 S.W.3d at 830 (citation omitted).

In this timely appeal, the petitioner asserts that claims contained in a book about the offenses, *see* Judith A. Yates, She is Evil!: Madness and Murder in Memphis (2017), and the fact that she stood to inherit from her estranged husband's estate upon his death qualify as newly-discovered evidence entitling her to a new trial. The petitioner asserts that the book proves that Ms. Marsh accompanied detectives as they searched the victim's residence, that the victim had assaulted his ex-wife and family pet, and that paperwork belonging to the victim that was discovered during the search of the victim's residence was returned to the victim's family. As an initial matter, we note, as did the trial court, that the claims that appear in the book were the product of interviews with any number of people after the petitioner's trial. In consequence, they are inadmissible hearsay. More importantly, however, even if we assume that the claims in the book would have been admissible at trial, we cannot say that the result of the proceeding would have been different. The evidence against the petitioner was overwhelming. She shot and stabbed the victim, attempted to dismember him, succeeded in decapitating him, secreted his body in a shed, misdirected family and friends who attempted to locate the victim, and sold off his property. That Ms. Marsh went through the house, that the victim might have assaulted his ex-wife, or that the police returned some of the victim's paperwork to his family would not have impacted the jury's verdict.

The petitioner also claims that evidence that she would later inherit from her estranged husband upon his death would have been admissible to contradict evidence presented by the State suggesting that the petitioner murdered the victim for financial gain. That the victim stood to benefit at some undetermined point in the future upon the death of her then estranged husband does not actually contradict evidence that the victim gained financially from the victim's death by selling off the victim's property. Consequently, we cannot say that, had this evidence been admitted at trial, the result of the proceeding would have been different.

Because none of the petitioner's assertions can avail her of coram nobis relief, the coram nobis court did not abuse its discretion by summarily dismissing her petition.

-4-

Accordingly, we affirm the judgment of the coram nobis court.

_____
JAMES CURWOOD WITT, JR., JUDGE