IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2024

**KEVIN LAMONT FRENCH v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2466     Steve R. Dozier, Judge**

_____

**No. M2023-01579-CCA-R3-ECN**
_____

The Petitioner, acting pro se, appeals the Davidson County Criminal Court's summary dismissal of his petition for a writ of error coram nobis. Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JILL BARTEE AYERS and MATTHEW J. WILSON, JJ., joined.

Kevin Lamont French, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Glenn Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In September of 2012, the Petitioner, Kevin Lamont French, was convicted by a Davidson County jury of premeditated murder, felony murder, and especially aggravated robbery, for which he received life sentences for the murder convictions and a concurrent sentence of twenty-one years for his especially aggravated robbery conviction. State v. French, No. M2013-01270-CCA-R3-CD, 2014 WL 3530947, at *1 (Tenn. Crim. App. July 16, 2014). This court affirmed his convictions on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for review on November 20, 2014.

As relevant to the instant petition, Kimberly McLemore testified at trial that at the time of the offense:

[S]he was vacuuming her car's interior at the car wash that day, and she observed a young man—the victim—walk by her car, talking on a cellular telephone. She then saw a car "that still had soap all over it" drive out of a wash bay. The car was "four door, metallic blue [,] . . . set up high on tires and r[i]ms." The car stopped by the victim, and the driver opened his door. Ms. McLemore said that the victim and the driver conversed but that she could not hear their words over the vacuum cleaner. She continued to vacuum but also looked toward the two men occasionally because they were near sports equipment that she had placed on the ground. Ms. McLemore testified that she then heard three gun shots and that she dived into her car. She heard "tires screeching" and saw the victim "staggering . . . like he was trying to walk away." Ms. McLemore said that she "was screaming" and "was frantic." She saw the victim "drop[] to his knees." She said that the blue car tried to run over the victim, "but they couldn't, so the tires were spinning out." She continued, "And as the tires continued to spin as they were trying to go forward, they just ran over him." Ms. McLemore testified that she did not know who fired the shots. She described the driver of the blue car as "a black male" wearing "a black stocking cap." Ms. McLemore said that she was "[v]ery close" to the gunfire and that there was a bullet hole in her car from the incident.

Ms. McLemore further testified that on November 20, 2008, she met with Detective Paul Harris to attempt to identify someone involved in the shooting. She said that in a photographic lineup, she circled "the gentleman . . . [who] looked familiar to me, [who] was driving the blue car." Ms. McLemore agreed that she told Detective Harris, "'100 percent sure, no, but I do believe that's the guy I saw.'" She testified that she had been watching both the driver of the blue car and the victim because she "didn't know if these guys were going to steal [her softball equipment] or what, so [she was] constantly looking out of [her] car to make sure . . . that they [didn't] get [her] stuff" and that "some people you just don't forget."

        . . . .

[Metro Nashville Police Department ("MNPD")] Detective Paul Harris testified that he was the lead investigator in this case. He said that while he was at the crime scene, he was told that a 9-1-1 caller had "notified dispatch that the persons responsible for this had arrived in a gold Chevy [T]railblazer." He also testified that the victim had called 9-1-1 himself. The following day, the victim's car was discovered by the Millersville Police Department, and Detective Harris had the vehicle brought to Nashville.

Detective Harris testified that during the course of his investigation, he developed [the Petitioner] as a suspect. He said that he showed a photographic lineup to Ms. McLemore, who identified [the Petitioner's] photograph.

French, 2014 WL 3530947, at *1-5.

The Petitioner subsequently filed a petition for post-conviction relief based on numerous grounds. As relevant to the instant petition for writ of error coram nobis, the Petitioner argued he received ineffective assistance of counsel due to trial counsel's failure "to object to the State's mischaracterization of Ms. McLemore's testimony in its closing argument." French v. State, No. M2019-01766-CCA-R3-PC, 2021 WL 1100765, at *15 (Tenn. Crim. App. Mar. 23, 2021). The Petitioner also asserted that "the State committed prosecutorial misconduct in closing argument; the State committed a Brady violation, i.e., withheld exculpatory evidence; and that he [was] actually innocent." Id. at *19. Detective Harris testified at the post-conviction hearing, in relevant part, as follows:

Detective Harris acknowledged that he testified that Ms. McLemore identified the Petitioner in a photographic array as the person who shot the victim. However, the transcript reflected that Ms. McLemore actually testified that she did not know who fired the shots. At the post-conviction hearing, Detective Harris recalled that Ms. McLemore "was able to view some of the incident while she was in the process of vacuuming," but he could not recall "exactly how she described the events she saw." After reviewing certain documents, Detective Harris acknowledged that when Ms. McLemore viewed a photographic array, she circled the Petitioner's photograph and wrote that she was not "100 percent sure . . . [b]ut [she] . . . believe[d] that's the guy [she] saw." He additionally acknowledged that it did not appear that Ms. McLemore ever specifically said that she saw the Petitioner shoot the victim.

Id. at *10.

The Petitioner additionally alleged that "in its closing argument, the State claimed that Ms. McLemore identified him as the shooter but in actuality, Ms. McLemore 'never testified to that, she did not see the shooter.'" Id. at *11. In ruling upon this issue, this court observed:

[T]he post-conviction court recognized that counsel "*could* have made [the] objection," but it was unclear whether counsel had a tactical reason for failing to do so. The court summarized that "[e]ven if Ms. McLemore did not see

- 3 -

the Petitioner shoot the victim, as the State characterized in its closing argument, the jury heard testimony at trial that Ms. McLemore saw the victim and Petitioner together shortly before hearing gunshots in the area where they had been." The court continued that "[w]hile there is a factual distinction between the State's summary and the precise testimony offered at trial, it would not have been unreasonable for [counsel] to avoid drawing greater attention to one of the stronger components of the State's case." Moreover, the court concluded that there was "overwhelming evidence" against the Petitioner . . . such that counsel's failure to object did not undermine its confidence in the verdict.

We conclude that the State's comment regarding Ms. McLemore's identification was enough of a reasonable inference from the evidence so as to not necessitate an objection, and counsel's addressing the State's comment in his own closing argument rather than drawing more attention to it by launching an objection was a reasonable trial tactic. Moreover, we discern no reasonable probability that the outcome of the trial would have been different had counsel objected.

Id. at *16 (internal citation omitted).

In affirming the denial of post-conviction relief, this court further concluded that the State's comments during the closing argument were "not outside the bounds of reasonable inferences from the evidence and were not so inflammatory that they prejudiced the jury." Id. at *19-20. The Petitioner subsequently filed petitions seeking habeas relief in federal court on similar grounds, which were also denied. French v. Johnson, No. 3:16-CV-00552, 2022 WL 2912183, at *2 (M.D. Tenn. July 22, 2022), reconsideration denied, No. 3:16-CV-00552, 2022 WL 4391501 (M.D. Tenn. Sept. 22, 2022), opinion clarified, No. 3:16-CV-00552, 2023 WL 5340835 (M.D. Tenn. Aug. 18, 2023).

On September 19, 2023, the Petitioner filed the instant petition for writ of error coram nobis, claiming equitable tolling of the one-year statute of limitations was necessary due to newly discovered evidence not known to the Petitioner at the time of trial, which would have led to a different result. Specifically, the Petitioner asserted that in November of 2022, he contacted a private investigator, and on August 24, 2023, the investigator provided him with a recorded statement of Kimberly McLemore. The Petitioner relies on "discrepancies in her statement used by the prosecutor to indict and detain the [P]etitioner"; namely:

[T]hat on 11-20-08, I met with Kimberly McLemore at the East Precinct. She was the closest witness to Andre Veals, when he was killed. Some of

Andre's blood was even on the hood of her car. She was in her back seat vacuuming out her car, with her hatch open, as Andre Veals' car circled behind hers. She saw the shooter sitting in Andre Veals' car as he fired a weapon through the rolled down driver's window.

The Petitioner averred that on the recorded statement, "Kimberly McLemore stated that she did not tell the detective that she saw the [P]etitioner shoot or point a weapon at the victim." The Petitioner contends that this statement "exonerates" him and further establishes that he is actually innocent.

On October 23, 2023, the Davidson County Criminal Court filed an order summarily dismissing the petition. First, the court dismissed the petition on procedural grounds because the Petitioner failed to serve the district attorney general pursuant to Tennessee Code Annotated section 40-26-105. Next, the court dismissed the petition because it was untimely. The court observed that the Petitioner filed the error coram nobis petition eleven (11) years after his judgments became final in 2012. The court explained that "[w]hile the Petitioner avers his contact with Justice Warrior Investigation in 2022 led to a newly recorded statement from trial witness Kimberly McLemore, . . . a newly recorded statement is not the same as newly discovered evidence." The court observed that the Petitioner "had failed to address the untimeliness of his petition or provide an adequate explanation as to why he languished for ten (10) years post-judgment before seeking additional statements from the witness."

The Petitioner filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

A writ of error coram nobis is available to convicted defendants. Tenn. Code Ann. § 40-26-105(a). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1966)). Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

(b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on

- 5 -

the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

(c) The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause. . . .

Tenn. Code Ann. § 40-26-105(b), (c).

The decision to deny a petition for writ of error coram nobis on the grounds of subsequently or newly discovered evidence rests within the sound discretion of trial court, which this court will not disturb absent an abuse of discretion. Id. § 40-26-105. In order to qualify as "newly discovered evidence" for the purposes of a writ of error coram nobis, the proffered evidence must be (1) evidence of facts existing, but not yet ascertained, at the time of the original trial, (2) admissible, and (3) credible. Nunley v. State, 552 S.W.3d 800 (Tenn. 2018).

A petition for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. The petition is subject to being summarily dismissed if it does not show on its face that it has complied with the one-year statute of limitations, and such compliance is an essential element of a coram nobis claim. Nunley, 552 S.W.3d at 828. To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. Id. 828-829. If the coram nobis petition does not show on its face that it has been filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations:

To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims. . . . A prisoner

- 6 -

is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

Id. at 829.

"Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Id. at 830. Upon review of a petition for a writ of error coram nobis for timeliness, an appellate court must first determine whether the petitioner "asserted the claim in a timely manner and, if not, whether he has demonstrated that he is entitled to equitable tolling of the statute of limitations as provided in [Tennessee Code Annotated section 27-7-103]. The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." Id. at 831.

The record shows that the judgments were entered on October 26, 2012, and September 14, 2012, respectively. A petition for writ of error coram nobis must be filed within one year of the judgment becoming final, and in this case, those deadlines were October 26, 2013, and September 14, 2013, respectively. The Petitioner filed his petition for writ of error coram nobis on September 19, 2023, eleven years after the limitations period had expired. Accordingly, the petition is time-barred unless the Petitioner demonstrates he is entitled to equitable tolling of the statute of limitations.

To establish equitable tolling, the Petitioner relies on the newly recorded statement of Kimberly McLemore by the investigator and argues that he "was not allowed to present this witness to this court previously." Specifically, the Petitioner argues:

The [Petitioner] provided a sufficient basis for tolling and the [Petitioner] showed the introduction of the evidence may have changed the outcome of the case. The Coram nobis court further declined to review the evidence [the Petitioner] submitted in support of the claim. [The Petitioner] expressed to the court that he was not allowed to present this witness to this court previously. [The Petitioner] did not received the actual interview video of Ms. McLemore and [D]etective Harris until post-conviction.

Although not included in his petition for writ of error coram nobis, the Petitioner's brief includes several allegations against his prior counsel for failing to provide him with the "actual interview video of the Detective and the witness" and alleging "misrepresentation and misconduct of trial, appellate and post-conviction counsel." The Petitioner's brief also acknowledges that prior counsel "refused to pursue these claims, telling the [Petitioner] that the statements were inconsistent statements given by the witnesses."

- 7 -

We conclude that the coram nobis court properly dismissed the petition as untimely. The Petitioner has failed to establish that he was entitled to due process tolling. He alleged that he obtained the recorded statement of trial witness Kimberly McLemore from the investigator on August 24, 2023. However, this witness has been known to the Petitioner since 2012, and the petition did not establish why the Petitioner waited until November of 2022, nearly ten years after his convictions became final, to contact a private investigator in order to obtain an additional statement from the trial witness. On this record, the Petitioner has failed to show that a strict application of the limitations period would effectively deny him a reasonable opportunity to present the claim, and therefore, he is not entitled to relief.

## CONCLUSION

Based on the above reasoning and authority, we affirm the judgment of the coram nobis court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE