IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

## REGGIE HORTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 16-04141        Chris Craft, Judge
_____

**No. W2024-01476-CCA-R3-ECN**
_____

The Petitioner, Reggie Horton, was found guilty in an October 2016 trial of the offenses of attempted voluntary manslaughter, aggravated kidnapping, and simple assault related to conduct occurring on April 27, 2015. *State v. Horton*, No. W2017-00676-CCA-R3-CD, 2018 WL 1598895 (Tenn. Crim. App. Mar. 29, 2018), *no perm. app. filed*. On April 27, 2023, while post-conviction proceedings were pending, the Petitioner filed a writ of error coram nobis petition challenging only his conviction of aggravated kidnapping, claiming newly discovered evidence entitled him to a new trial on this offense. The Petitioner appeals the Shelby County Criminal Court's dismissal of his petition for writ of error coram nobis, arguing he is entitled to due process tolling of the statute of limitations and the merits of his claim warrant relief. Finding no error, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Josie S. Holland, Memphis, Tennessee, for the appellant, Reggie Horton.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Steve Mulroy, District Attorney General; and Marie Ford, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.   FACTUAL AND PROCEDURAL BACKGROUND

## A. TRIAL

According to the proof at trial, the Petitioner and Tokisha Craig had three children together over the course of an eleven-year relationship. *Id*. at *1. In 2013, while still romantically involved with the Petitioner, Ms. Craig's relationship with her friend Kristen Franklin became a romantic one. *Id*. The Petitioner soon learned of the relationship and was not happy about it. *Id*. In November 2014, Ms. Craig and her children moved in with Ms. Franklin. The Petitioner did not like his children being raised in a home by two women and made derogatory remarks about Ms. Franklin and Ms. Craig's relationship with her. *Id*. There was no formal custody agreement, but Ms. Craig generally allowed the Petitioner to see the children when he requested. *Id*.

Evidence of an antagonistic relationship between the Petitioner and Ms. Franklin was introduced, including an incident in early January 2015 in which they taunted each other via text messages following a visit by the Petitioner to Ms. Franklin's home to see Ms. Craig and the children when Ms. Franklin was not there. *Id*. The Petitioner returned to Ms. Franklin's home later the same day in an angry state. *Id*. Ms. Craig was unable to calm the Petitioner, and he "kicked open both the front door of the residence and the locked master bathroom door" to assault Ms. Franklin, while also threatening to kill her. *Id*. at *1-2. The Petitioner fled after Ms. Craig pushed the panic button of the home's alarm system. *Id*. at *2. Following this event, Ms. Craig still allowed the Petitioner to have visitation with the children. *Id*. The Petitioner attempted to reconcile with Ms. Craig, even proposing to her in February, but Ms. Craig refused his proposal. *Id*.

On April 27, 2015, the Petitioner requested via text message to see Ms. Craig and the children for his birthday, but she answered that she was not available. *Id*. The same morning, Ms. Franklin, Ms. Craig, and Ms. Craig's youngest child went to David's Bridal Shop for Ms. Franklin to get a dress for a friend's wedding. *Id*. As the two women and the child left the store, the Petitioner, with a knife in his hand, hurried toward them telling them he was going to kill them and accusing them of planning to get married. *Id*. While Ms. Craig attempted to calm the Petitioner down, the Petitioner "swung the knife in Ms. Craig's direction, cutting her arm and her handbag." *Id*. The Petitioner then attacked Ms. Franklin with the knife, stabbing her in the back, nose, neck, and fingers. Throughout this attack, the Petitioner was threatening to kill Ms. Craig after he killed Ms. Franklin. *Id*. Ms. Craig attempted to intervene to help Ms. Franklin, and, in the process, the two women disarmed the Petitioner and flung the knife away. *Id*. Ms. Craig's hand was cut while disarming the Petitioner. *Id*.

According to Ms. Craig's trial testimony and the testimony of other witnesses, the Petitioner then grabbed Ms. Craig by both her hair and her arm and "dragged her to his truck." *Id*. at *2-3. Ms. Craig testified that this caused her pain and that she lost her

eyeglasses and shoes in the process. *Id.* at *2. Ms. Craig was unable to get into the vehicle due to an ankle injury; the Petitioner then painfully punched her in the head and in the back. *Id.* After attacking her this way, the Petitioner proceeded to lift her into the back seat of his vehicle, positioning her in such a way that she was unable to move, before closing the door and returning for the child. *Id.* The Petitioner then placed the child in the back seat as well and drove away. *Id.*

The Petitioner then drove to a Motel 6 where he parked in front of the office and locked the child and Ms. Criag in the vehicle with the child locks engaged and the front seat reclined, wedging Ms. Craig in between the seats. *Id.* at *3. After returning to the vehicle, the Petitioner parked in front of his motel room and moved Ms. Craig and the child into the room, all the while yelling at Ms. Craig that everything was her fault and not to make a scene. *Id.* Once inside the room, the Petitioner barricaded the door. *Id.* Despite apologizing to Ms. Craig for what he had done, he would not allow her or the child to leave. *Id.* Ms. Craig then began to feel ill, due to being diabetic, and fell asleep. *Id.* Later, when she awoke, she heard the television news reporter stating that Ms. Franklin was in critical condition at the hospital and Ms. Craig's other children were on lockdown at their schools. *Id.*

The police later located the Petitioner's vehicle at the motel and saw the Petitioner standing outside his room talking on his cellphone. *Id.* at *4. When the Petitioner saw law enforcement, he went back into the motel room and was heard yelling "that he was going to kill [Ms. Craig] if [the police] came in the room." *Id.* (modification in original). An officer testified he heard "a girl crying and yelling," as well as a baby. *Id.* After two hours of negotiating with the Petitioner, he "peacefully surrendered and was placed under arrest." *Id.* The Petitioner testified he had only wanted to talk to Ms. Craig and that she was free to leave the motel at any time, but she never requested to leave. *Id.*

B. POST CONVICTION PROCEEDINGS

This court affirmed the Petitioner's convictions of attempted voluntary manslaughter, aggravated kidnapping, and simple assault on March 29, 2018. *Id.* at *1. The Petitioner filed a timely post-conviction petition,[1] which was pending on April 27, 2023, when he filed his petition for writ of error coram nobis. In his petition for writ of error coram nobis, the Petitioner asserted that Ms. Craig recanted her testimony by affidavit on June 29, 2022, entitling him to a new trial. Ms. Craig's affidavit included a statement that "[a]s [the Petitioner] kept shouting to tell me to come on[,] I told him OK." The

---

[1] On May 23, 2023, the trial court stayed the post-conviction proceedings pending the conclusion of the proceedings on his petition for writ of error coram nobis.

- 3 -

Petitioner argued this statement indicated Ms. Craig went willingly with him and was not the victim of an aggravated kidnapping.

On March 28, 2024, the coram nobis court heard opening arguments from the parties in this matter. The coram nobis court then set the matter for further hearing on May 31, 2024, to allow time for the coram nobis court[2] to review the trial testimony. At the hearing on May 31, 2024, Ms. Craig testified that she had agreed to go with the Petitioner on April 27, 2015, and that she had not been aware of what he had been charged with at the time of trial. She also repeatedly stated she had testified truthfully at the trial and indicated she could not recall having testified that she was scared of the Petitioner.

The Petitioner first argued for equitable tolling of the statute of limitations based on his assertion that he was without fault in the untimely filing of the petition because he only discovered the information on June 29, 2022, and he filed his petition on April 27, 2023. Next, the Petitioner argued the affidavit was recanted testimony which qualified as newly discovered evidence of actual innocence. He argued that the statement in the affidavit refuted the conviction for aggravated kidnapping and that this affidavit, along with Ms. Craig's hearing testimony, satisfied the standard for relief on the petition because it might have affected the jury's verdict. The State argued in response that the untimely petition did not qualify for equitable tolling as the Petitioner was present in the courtroom to hear Ms. Craig's trial testimony and would have been aware of any statement she made to him pretrial and its potential value as evidence. In addition, the State argued that the affidavit only served to impeach the trial testimony of Ms. Craig, that Ms. Craig testified at the hearing that her trial testimony was truthful, and that Ms. Craig's hearing testimony was "highly suspect" and false.

The coram nobis court denied the Petitioner's claim by written order on August 27, 2024, concluding that the petition was time-barred and that Petitioner was not entitled to relief on the merits. On the issue of the timeliness of the petition, the coram nobis court noted the petition was filed over six years after the denial of the Petitioner's motion for new trial, thus well beyond the one-year statute of limitations. The coram nobis court further held equitable tolling was not required because the Petitioner's claim failed to fall within one of the issues cognizable for coram nobis relief. Specifically, the coram nobis court held the alleged "new evidence" of Ms. Craig's statement in the affidavit was "something that, if true, he should have known prior to trial" because "the witness made that statement to him during the crimes alleged in the indictment, [and] he was present and would have known it at that time."

---

[2] The trial in this matter was heard by the Honorable W. Mark Ward in Division IX of the Shelby County Criminal Court. At the time of the hearing on the writ of error coram nobis, Division IX no longer existed, and the matter was transferred to the Honorable Chris Craft in Division VIII.

In its ruling denying the Petitioner's claim on the merits, the coram nobis court provided detailed references to portions of Ms. Craig's testimony from trial, along with evidence from other trial witnesses, which supported the Petitioner's conviction of aggravated kidnapping. The coram nobis court held Ms. Craig did not recant her trial testimony, as she repeatedly confirmed the truthfulness of her trial testimony during her hearing testimony. The coram nobis court found Ms. Craig's hearing testimony concerning not having been scared and having voluntarily left with the Petitioner lacked credibility and conflicted with her reaffirmed truthful trial testimony. The coram nobis court also held that if the affidavit could be interpreted as a recantation then it failed to warrant relief because Ms. Craig's trial testimony was found to be truthful while her hearing testimony, that she was scared and left willingly, was found to be false; that the Petitioner had not been reasonably diligent in discovering the evidence and was not surprised by the evidence, which he had known prior to trial; and that no jury's verdict might have been affected by the new evidence of Ms. Craig's decision to submit to the Petitioner's wishes under the circumstances. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Petitioner argues that the coram nobis court erred in dismissing his petition for writ of error coram nobis based upon its findings that equitable tolling did not apply and that the merits of his claim did not warrant relief. The State argues the coram nobis court's dismissal of the petition should be affirmed because the petition is not entitled to equitable tolling and because the petition fails to present a meritorious claim. We agree with the State and will address these issues in turn.

The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The relief available in criminal cases through the writ is as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (2018).[3] "[T]he petition must be pled with specificity," and an evidentiary hearing need only be conducted by the trial court when essential. *Clardy v. State*, 691 S.W.3d 390, 400-01 (Tenn. 2024). A petition for writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. "A judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed[,] or . . . upon entry of an order disposing of [any] post-trial motion." *Mixon*, 983 S.W.2d at 670. The timeliness of the petition is an essential element which must be set forth on the face of the petition. *Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). This one-year limitation, however, may be tolled on due process grounds if a petition seeks relief "based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id*. at 828-29. The facts demonstrating the need for equitable tolling also must be set forth on the face of the petition. *Id.* at 829.

The decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court, *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007), but "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Nunley*, 552 S.W.3d at 830 (citation omitted).

In *Clardy v. State*, 691 S.W.3d at 399, the Tennessee Supreme Court recently elaborated on the standard for equitable tolling of petitions for coram nobis relief. The court noted, the "analysis for relief on the merits of the petition is separate and distinct from the analysis for whether the statute of limitations may be tolled." *Clardy*, 691 S.W.3d at 399. Where a petitioner seeks the tolling of the one-year statute of limitations for an untimely-filed petition for a writ of error coram nobis,

> the coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence. If so, the coram nobis court should assume *arguendo* the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations. To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime.

---

[3] In 2023, a subsection of this statute was amended, but that amendment is not applicable in this case. The statute was further amended in 2025, after the filing of the petition in this case, but that amendment also is not applicable to this case.

*Id.* at 409 (citing *Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012). Only after determining that due process requires the tolling of the statute of limitations should the trial court consider the merits of the petitioner's claims. *Clardy*, 691 S.W.3d at 409. To meet the clear and convincing standard of proof, the evidence offered must not be "vague and uncertain," and there must be "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at 408 (quoting *State v. Jones*, 450 S.W.3d 866, 893 (Tenn. 2014)). Therefore, to toll the statute of limitations for coram nobis proceedings, "the new evidence of actual innocence, if credited, should leave the court with no serious or substantial doubt that the petitioner is actually innocent." *Id.*

Here, there was no dispute that the petition for writ of error coram nobis was filed beyond the one-year statute of limitations. The Petitioner and the State, however, disagreed about whether equitable tolling should apply. The coram nobis court found the petition for writ of error coram nobis was untimely and that no tolling of the statute of limitations was required under due process. In making this determination, the coram nobis court looked to the affidavit and determined Ms. Craig's assertion, that she had said "OK" to the Petitioner when he was ordering her to get into his truck after dragging her by her arm and her hair, was not newly discovered evidence because it was a statement known to the Petitioner pretrial, as it was a statement she allegedly made to him at the scene.

The April 27, 2023 petition for writ of error coram nobis here was not filed until over six years after the Petitioner's one-year limitation period expired on April 10, 2017, which was thirty days after the trial court's March 10, 2017 order denying his motion for new trial.[4] Thus, pursuant to *Clardy*, we must review the coram nobis court's ruling *de novo* to determine if the proffered evidence meets the strict pleading requirements to warrant equitable tolling.

The Petitioner claims Ms. Craig's affidavit qualifies as newly discovered evidence establishing his actual innocence of the offense of aggravated kidnapping because it was unknown to him prior to Ms. Craig's June 29, 2022 affidavit. First, the proffered evidence does not qualify as newly discovered evidence because Petitioner's assertion that the untimely filing of his petition was through no fault of his own is not supported by the record. The evidence presented in the affidavit is a statement allegedly made by Ms. Craig to the Petitioner at the crime scene; therefore, the statement was known to the Petitioner pretrial and would not qualify as evidence discovered after the expiration of the limitations period or as evidence which could not have been litigated at trial. *See, e.g.*, *Lautenschlager v. State*, No. W2024-00582-CCA-R3-ECN, 2024 WL 4815053 at *4 (Tenn. Crim. App. Nov. 18, 2024), *perm. app. denied* (Tenn. Apr. 17, 2025); *French v. State*, No. M2023-

---

[4] April 10, 2017, was the expiration date because thirty days would have been April 9, 2017, which was a Sunday.

01579-CCA-R3-ECN, 2024 WL 3172266 at *5 (Tenn. Crim. App. June 26, 2024), *perm. app. denied* (Tenn. Nov. 14, 2024).

Also, assuming the credibility of this proffered evidence for equitable tolling purposes, Ms. Craig's affidavit does not support equitable tolling because it does not clearly and convincingly show that the Petitioner is actually innocent of the aggravated kidnapping conviction. Multiple witnesses, including Ms. Craig, testified concerning the circumstances and facts supporting the Petitioner's conviction of aggravated kidnapping. The evidence at trial established the Petitioner cut Ms. Craig with a knife, dragged her by her hair and arm to his truck across a parking lot, punched her in the back of her head and in her back when she did not get into the truck, picked her up, put her in the back seat of the truck, and locked her inside. The evidence further established the Petitioner then drove her, as well as their youngest child, to a local motel where he again locked her in the vehicle, barricaded her in a motel room, and told the police he would let the child out of the room, but not Ms. Craig. Ms. Craig's affidavit also stated the Petitioner told the police that he would not let her leave the motel room. The affidavit submitted was not a complete recantation of Ms. Craig's trial testimony but rather a short statement which included an additional detail that she said "OK" to going with the Petitioner when he was angry and shouting at her. In the face of the abundance of evidence presented at trial, this statement does not clearly and convincingly show the Petitioner is actually innocent. We find the coram nobis court did not err in concluding that the petition was untimely and that due process considerations did not require the equitable tolling of the statute of limitations. *See Clardy*, 691 S.W.3d at 409.

The Petitioner also claims the coram nobis court erred in finding that Ms. Craig did not recant her testimony and that he was not entitled to relief on the merits of his petition. Recanted testimony may qualify as newly discovered evidence. *Mixon*, 983 S.W.2d at 672. However, new evidence in the form of recanted testimony should only support a new trial pursuant to a petition for writ of error coram nobis if:

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Id*. at 673 n.17; *see also State v. Housler*, 193 S.W.3d 476, 494 (Tenn. 2006) (citing *Mixon*, 983 S.W.2d at 666). The decision to grant or deny the petition is within the sound discretion of the coram nobis court and will not be overturned absent a showing of abuse of discretion.

- 8 -

*See* Tenn. Code Ann. § 40-26-105; *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

In considering the first *Mixon* requirement, we conclude the coram nobis court did not abuse its discretion in finding that it was well satisfied that Ms. Craig's trial testimony was truthful, but her hearing testimony, that she was not scared of the Petitioner and wanted to leave with him, lacked credibility. At trial, she repeatedly testified she was scared of the Petitioner on the day of the offenses and that she had not been free to leave. She testified her injuries had caused her pain. She testified she had never seen the Petitioner act the way he acted on the day of the offenses. Other trial witnesses corroborated Ms. Craig's trial testimony. At the hearing on the petition, she affirmed the truthfulness of her trial testimony, despite being confronted with the discrepancies between it and her hearing testimony. Ms. Craig also admitted at the hearing that she wanted the Petitioner to get out of prison. In considering the second *Mixon* requirement, we discern no abuse of discretion in the coram nobis court's conclusion that the Petitioner was fully aware of the "new" evidence before his trial, as discussed above. Lastly, as to the third *Mixon* requirement, the coram nobis court did not abuse its discretion in finding that the jury would not have reached a different verdict even if the "new evidence" had been presented at trial. *See State v. Duff*, No. E2013-01582-CCA-R3-CD, 2014 WL 6612578, at *1 (Tenn. Crim. App. Nov. 24, 2014), *perm. app. denied Apr. 10, 2015*, (finding sufficient evidence to support a defendant's conviction of aggravated kidnapping despite the victim's testifying she left willingly with the defendant).

The coram nobis court set forth a detailed analysis of the evidence of Ms. Craig's testimony at trial as well as the evidence presented by others supporting the Petitioner's guilt of aggravated kidnapping. The coram nobis court also quoted the following summary of the sufficiency of the evidence from the Petitioner's direct appeal:

> In the instant case, the proof at trial established that the defendant dragged Ms. Craig by her hair and arm to his truck, and Ms. Craig testified that these actions caused her pain. Additionally, Ms. Craig testified that the defendant punched her in the back and in the head while forcing her against her will into his truck. Ms. Cummings, who witnessed this attack, testified that the defendant appeared to be beating Ms. Craig "within an inch of her life." Again, Ms. Craig testified that this beating caused her physical pain. Thus, the evidence sufficiently established that the defendant committed the offense of aggravated kidnapping.

*Horton*, 2018 WL 1598895, at *8. The record supports the coram nobis court's conclusion.

### III. CONCLUSION

Following our review of the record and based on the foregoing analysis, we affirm the judgment of the coram nobis court.

*s/ Steven W. Sword*

STEVEN W. SWORD, JUDGE